# 24-1405-cv

## United States Court of Appeals
### *for the*
### Second Circuit

KENNETH MAUER,

*Plaintiff-Appellee,*

– v. –

PENSION COMMITTEE OF THE NATIONAL
BASKETBALL ASSOCIATION REFEREES PENSION PLAN,

*Defendant-Appellant,*

NATIONAL BASKETBALL ASSOCIATION, NBA SERVICES CORP.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANT-APPELLANT

JOHN E. ROBERTS
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9813

MYRON D. RUMELD
SYDNEY JULIANO
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3021

*Attorneys for Defendant-Appellant*

 (800) 4-APPEAL • (331151)

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellant Pension Committee of the National Basketball Association Referees' Pension Plan is not required to file a statement pursuant to Federal Rule of Appellate Procedure 26.1 because it is not a corporate party.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................1

JURISDICTIONAL STATEMENT ....................................................4

STATEMENT OF THE ISSUES.........................................................4

STATEMENT OF FACTS ..................................................................4

      A.    The NBA Referees' Pension Plan ......................................4

      B.    Mauer's Employment and Wrongful Termination Lawsuit.................6

      C.    Mauer's Administrative Claim for Immediate Payment of a Lump Sum Pension Benefit.............................................7

      D.    Procedural History.............................................................8

STANDARD OF REVIEW ...............................................................11

SUMMARY OF ARGUMENT ........................................................11

ARGUMENT ...................................................................................13

I.     THE DISTRICT COURT SHOULD NOT HAVE CONSIDERED MAUER'S BELATEDLY PROFFERED CONSTRUCTION OF THE PLAN. ...................................................................................13

II.    THE DISTRICT COURT ERRED IN HOLDING THAT THE PHRASE "TERMINATION OF EMPLOYMENT" UNAMBIGUOUSLY REQUIRES IMMEDIATE PAYMENT OF MAUER'S PENSION. ..................................................................17

      A.    The Committee's Construction Was Reasonable................................18

      B.    The District Court Erred in Holding That the Plan Unambiguously Requires Immediate Payment of Mauer's Pension. ...................................................................20

            1.    The District Court Mischaracterized the Committee's Position.........................................................21

            2.    The District Court Incorrectly Concluded That Other Plan Provisions Made the Meaning of "Termination of Employment" Unambiguous........................................22

            3.    The District Court Misapplied the Case Law Concerning Ambiguity in a Plan Document........................................25

CONCLUSION ................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amato v. Bernard*,
  618 F.2d 559 (9th Cir. 1980) ...............................................................15

*Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost
  Insulators Local 12*,
  No. 22-2544, 2023 WL 4692316 (2d Cir. July 24, 2023) ...................20

*Celardo v. GNY Auto. Dealers Health & Welfare Trust*,
  318 F.3d 142 (2d Cir. 2003) ..........................................................13, 17

*Conkright v. Frommert*,
  559 U.S. 506 (2010)......................................................................12, 15

*Davis v. Comm'r*,
  716 F.3d 560 (11th Cir. 2013) .............................................................20

*Evans v. Eaton Corp. Long Term Disability Plan*,
  514 F.3d 315 (4th Cir. 2008) ...............................................................15

*Firestone Tire and Rubber Co. v. Bruch*,
  489 U.S. 101 (1989).............................................................................17

*Gomez v. Ericsson, Inc.*,
  828 F.3d 367 (5th Cir. 2016) .........................................................12, 14

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*,
  819 F.3d 42 (2d Cir. 2016) ..................................................................16

*Heidgerd v. Olin Corp.*,
  906 F.2d 903 (2d Cir. 1990) ................................................................25

*Kirkendall v. Halliburton, Inc.*,
  707 F.3d 173 (2d Cir. 2013) ................................................................15

*McCauley v. First Unum Life Ins. Co.*,
    551 F.3d 126 (2d Cir. 2008) ...............................................................27

*O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen.*,
    37 F.3d 55 (2d Cir. 1994) ............................................................21, 26

*Soto v. Disney Severance Pay Plan*,
    26 F.4th 114 (2d Cir. 2022) ....................................................3, 26–29

*Tiffany & Co. v. Costco Wholesale Corp.*,
    971 F.3d 74 (2d Cir. 2020) .................................................................11

*Vaught v. Scottsdale Healthcare Corp. Health Plan*,
    546 F.3d 620 (9th Cir. 2008) ............................................................14

## STATUTES

26 U.S.C. § 401 ......................................................................................18

28 U.S.C. § 1291 ......................................................................................4

28 U.S.C. § 1331 ......................................................................................4

29 U.S.C. § 1002 ......................................................................................4

29 U.S.C. § 1132 ...................................................................................4, 8

## OTHER AUTHORITIES

26 C.F.R. § 1.401(a)-1(b)(1)(i) ..............................................................19

I.R.S. Priv. Ltr. Rul. 201147038, 2011 WL 5893533 (Nov. 25, 2011) ...................20

## PRELIMINARY STATEMENT

Appellee Kenneth Mauer ("Mauer") commenced this lawsuit seeking an immediate lump sum payment of his pension under the National Basketball Association Referees' Pension Plan (the "Plan"). The lawsuit followed a determination by the Plan's Pension Committee (the "Committee") that Mauer is not yet entitled to receive his pension because there is uncertainty as to whether he might return to work as a National Basketball Association ("NBA") referee as a result of a separate lawsuit he commenced challenging his termination. The district court overturned the Committee's determination, concluding that Mauer is entitled to immediate receipt of his pension regardless of his prospects for returning to work.

In so ruling, the district court usurped the Committee's role in construing and applying the terms of the Plan. The Supreme Court has explained that where (as here) a plan document grants the plan's administrative committee the discretion to interpret the plan and determine a claimant's eligibility for benefits, the committee's determination must be upheld unless it is arbitrary and capricious— which the Committee's determination here was not. The Committee rationally read the Plan to require the payment of a pension only where there is no reasonable possibility of the referee returning to employment. The Committee then

determined that there is a reasonable possibility of Mauer's employment being reinstated on account of his lawsuit. Those determinations should control.

The district court nevertheless afforded no deference to the Committee's determinations and decided for itself that the Plan must pay Mauer his pension immediately. According to the court, the relevant Plan provisions are "unambiguous" and require the pension to be paid. But the relevant Plan terms are not unambiguous under any reading. What's more, Mauer never challenged the Committee's construction of the Plan before filing his lawsuit. As a result, the Committee never had the opportunity during the administrative process to consider the construction of the Plan document that the district court later deemed "unambiguous."

The district court's judgment as to Mauer's entitlement to immediate payment of a pension should be vacated for two reasons. *First*, as a procedural matter, because Mauer did not challenge the Committee's construction of the Plan during the administrative process, at a minimum the case should have been remanded for the Committee to consider Mauer's proposed construction in the first instance. By proceeding without the benefit of a prior determination by the Committee, the district court contravened well-established principles that grant to the plan's administrative committee the preeminent role in construing and applying

plan terms and assign to the district court the more limited role of reviewing the administrative record.

*Second*, as a substantive matter, the district court is wrong that the relevant Plan terms are unambiguous.  Notably, the district court never actually said what it thinks the relevant provisions mean.  Instead, the court merely rejected a strawman interpretation that the Committee never adopted:  that "termination of employment" means a "permanent, irrevocable" cessation of employment.  The Committee never proposed such a construction.  Instead, the Committee found that, for purposes of determining whether a referee was "terminated" and thus entitled to immediate receipt of a pension, the Plan must consider whether there is a reasonable possibility that the referee might return to work.  That interpretation is not only plausible, but correct.  Otherwise, the Plan would be forced to award pension benefits even to those referees who—at the same time they are awarded a pension—are likely or seeking to return to work, which is clearly not what the Plan intended and could lead to serious tax disqualification issues.

Under similar circumstances to those present here, this Court has found ambiguity in a plan's terms and, on that basis, upheld a plan committee's interpretation under an arbitrary and capricious standard of review.  *See Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 121–25 (2d Cir. 2022).  The district court should have done the same here.

3

## JURISDICTIONAL STATEMENT

The Complaint alleges claims for benefits and breach of fiduciary duty under 29 U.S.C. § 1132.  The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132.

The district court issued its final judgment on April 22, 2024.  SPA-1–2. The Committee timely appealed as to part (i) of the judgment on May 21, 2024.[1] A-305.  This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1)   Did the district court err by construing the Plan document without providing the Committee with an opportunity to address, in the first instance, the construction proposed by Mauer?

2)   Did the district court err by holding that the Plan unambiguously entitles Mauer to immediate payment of his pension even though the Committee determined that there is a reasonable possibility that he will return to work?

## STATEMENT OF FACTS

### A.   The NBA Referees' Pension Plan

The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2).  A-10.  It provides retirement benefits to employees who

---

[1] The Committee appeals only from part (i) of the district court's judgment, which found the Committee liable as to Count I of the Complaint.  SPA-1.

worked as referees in the NBA.  A-22–27.  The Plan is administered by the Committee.  A-107.

Plan participants accrue a retirement benefit based on their years of service.  A-24, A-33–45.  Participants cannot collect their retirement benefit prior to a distribution event.  Article VIII of the Plan enumerates the distribution events, which include retirement, "termination of employment," attainment of age 70 ½ while actively employed, and disability.  A-51–54.  This appeal turns on the meaning of "termination of employment."  A-53.  As the district court observed (A-297), that phrase is not defined in the Plan.

As a default, participants receive their retirement benefit in the form of an annuity.  A-33–39, A-54–55.  Participants can elect to receive their benefit in other forms, however, including a lump sum.  *See, e.g.*, A-55–56, A-59, A-128.

The Plan document prescribes a procedure for participants to submit a claim for a benefit.  A claimant must make a written application to the Committee "set[ting] forth all information necessary to determine whether the claim should be approved or denied."  A-114.  If the claim is denied, the claimant may appeal to the Committee and can "submit issues and comments in writing for consideration by the Committee."  A-115.  The Plan provides that the Committee's decision "as to any disputed question . . . including questions of construction, interpretation and administration shall be final, binding and conclusive."  A-108.

5

**B.    Mauer's Employment and Wrongful Termination Lawsuit**

Mauer worked as an NBA referee beginning in 1986.  A-8.  In August 2021, NBA Services Corp. ("NBA Services")[2] and the National Basketball Referees Association (the union representing Mauer and other NBA referees) entered into an agreement imposing a COVID-19 vaccination requirement for the 2021-2022 NBA season.  A-273, A-283.

Mauer requested a religious and medical exemption from the vaccination requirement.  A-283.  Following a review of his submitted materials, an interview, and an analysis by a medical expert, NBA Services denied Mauer's request for an exemption.  *Id.*  Mauer's employment officially ended on September 1, 2022, because he refused to comply with the vaccination requirement.  A-9, A-274.

Mauer sued the NBA and NBA Services in November 2022 challenging his discharge.  A-9; *see also Phillips v. Nat'l Basketball Ass'n*, No. 22-cv-9666 (S.D.N.Y.).[3]  The operative complaint in that case alleges five causes of action arising under: (*i*) Title VII, 42 U.S.C. § 2000e-2 *et seq.*; (*ii*) the New York State Human Rights Law, N.Y. Exec. Law § 296; (*iii*) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107; (*iv*) 42 U.S.C. § 1983; and (*v*) the Religious

---

[2] NBA Services is the entity that employs the referees who officiate NBA games.

[3] Another former referee and a former referee manager are also plaintiffs in that case.

Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.* A-9, A-220–236. The

complaint demands a broad range of relief, including "all relief available under the

law" and "such other and further relief as the Court deems just and proper."

A236–237.

### C. Mauer's Administrative Claim for Immediate Payment of a Lump Sum Pension Benefit

On January 17, 2023, Mauer submitted a claim to the Committee seeking

immediate payment of his pension benefit in the form of a lump sum. A-144. The

Committee denied the claim, finding that Mauer had not yet satisfied the

conditions for receipt of his benefit. A-144–145. Specifically, the Committee

found that, in light of the pendency of his lawsuit, there is uncertainty as to

whether Mauer might return to employment as an NBA referee. *Id.* Accordingly,

Mauer had not yet "attained a distribution event," "such as retirement or

termination of employment," within the meaning of the Plan. A-145.

Mauer appealed the Committee's determination under the Plan's internal

procedure. A-150–155. In his appeal, Mauer did not dispute the Committee's

interpretation of the Plan as precluding immediate payment of a pension if there is

uncertainty as to whether the participant might return to work as a referee. A-145.

Instead, Mauer contended that there is no possibility that he might return to work

because he seeks only money damages in his lawsuit. A-152. In support of that

position, Mauer cited cases allegedly showing that he was precluded from seeking

7

reinstatement of his employment, and he submitted a declaration asserting that he does not intend to seek reinstatement in his lawsuit. A-150–155.

The Committee denied Mauer's appeal on May 19, 2023. A-156–158. The Committee noted that "[Mauer's] letter does not dispute the Determination's underlying premise that, if there is uncertainty as to your return to employment as an NBA referee, a distribution event has not been attained under the terms of the Plan." A-157. The Committee further found that such uncertainty existed because Mauer could, for example, amend his complaint to demand reinstatement. A-157–158.

### D.   Procedural History

On June 13, 2023, Mauer commenced this lawsuit against the NBA, NBA Services, and the Committee. The Complaint asserts two causes of action: (*i*) a claim under 29 U.S.C. § 1132(a)(1)(B) that Defendants violated ERISA and the Plan by denying Mauer's claim for benefits; and (*ii*) a claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) based on the same theory. A-16–17. In support of his claims, Mauer reiterated his contention that he could not return to work as a referee because his demand for front pay relief in his discrimination lawsuit precluded him from being reinstated. A-11–16.

Defendants moved to dismiss Mauer's complaint, arguing that the Committee's determination to deny Mauer's claim for his retirement benefit was

not arbitrary and capricious.  A-159–183.  Mauer opposed and cross-moved for summary judgment.  A-239.  In his cross-motion, Mauer for the first time challenged the Committee's construction of the Plan document.  Specifically, he argued that the Plan does not condition the payment of a pension on there being no reasonable possibility that a participant would return to work.  A-249–256.  Instead, he argued, the Plan unambiguously conditions the payment of benefits on the "discontinu[ance] or end" of employment, and nothing more.  A-250.

In an opinion and order dated March 13, 2024, the district court granted Defendants' motion to dismiss the fiduciary breach claim and to dismiss the NBA and NBA Services as defendants but denied the motion with respect to the claim for benefits against the Committee.  A-290–304.  The court then granted Mauer's cross-motion for summary judgment against the Committee.  A-304.

In its summary judgment ruling, the district court acknowledged that the Plan document "clearly vests the Committee with broad discretionary authority to interpret ambiguous language in the Plan and determine eligibility for benefits." A-296.  As a result, the court noted, the Committee's interpretation of the Plan document would ordinarily be reviewed under an arbitrary and capricious standard. A-297.  Nevertheless, the court found that deference to the Committee's construction of the Plan was not warranted because "'termination of employment'

is unambiguous and cannot bear the meaning Defendants have ascribed to it." A-300–301.

The court never stated what, in its view, the unambiguous meaning of "termination of employment" is. Instead, it rejected what it characterized as Defendants' proffered interpretation: that "termination of employment" means a "permanent, irrevocable cessation" of employment. A-298–299, A-302–303. But that was not Defendants' position. Although Defendants pointed out that "termination" "is generally understood to mean a permanent, irrevocable cessation" (A-266),[4] their contention was that "a contextual reading of the Plan" shows that the Committee is permitted "to consider whether the Referee may be reemployed" when determining whether a pension must be paid. A-267.

In discussing the meaning of "termination of employment," the district court examined Plan provisions that address the pension status of former referees who later return to work. A-299–302.[5] The court concluded that because the Plan contemplates the possibility that former employees will later return to work, the

---

[4] Notably, Mauer agreed that "termination," as used in the Plan and elsewhere, is generally understood to mean a permanent cessation like death, retirement, or disability. A-250.

[5] One such provision cited by the court (§ 8.6) had actually been deleted from the Plan years earlier. A-134. Other provisions addressing the rights of returning participants to accrue additional benefits were meaningless because, as of 2010, the Plan was frozen, and thus no benefit accruals have been permitted since that time. A-45.

Committee is required to pay a retirement benefit immediately upon a participant's termination. A-299–302.

For those reasons, the court held that the phrase "termination of employment" is "unambiguous" and the Committee's construction of that term was therefore not entitled to deference. A-300–301. The court further held that, based on the Plan's "unambiguous" meaning, Mauer experienced a "termination of employment" and was entitled to the immediate payment of his pension. A-301–302.

## STANDARD OF REVIEW

This Court reviews a district court's summary judgment ruling *de novo*. *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020).

## SUMMARY OF ARGUMENT

**I.** The district court erred by addressing an argument that Mauer did not raise during the administrative claims review process: that "termination of employment" is unambiguous and means a separation from employment regardless of the possibility that the participant will return to work as a referee. During the administrative process, Mauer did not dispute the Committee's interpretation of the phrase to mean separation from employment with no reasonable possibility of returning. Instead, Mauer argued that he was entitled to a pension under the

Committee's interpretation because there was no reasonable possibility of his returning to work as a referee. A-151–152.

Mauer nevertheless reversed course at the district court and challenged the Committee's construction of the Plan document for the first time during summary judgment briefing. Because Mauer never disputed the meaning of the Plan document during the administrative process, his argument was not exhausted and should not have been addressed below. *See Gomez v. Ericsson, Inc.*, 828 F.3d 367, 374 (5th Cir. 2016). At a minimum, the district court should have remanded for the Committee to address in the first instance Mauer's argument about the Plan's meaning. *See, e.g.*, *Conkright v. Frommert*, 559 U.S. 506, 522 (2010).

**II.** The Committee reasonably construed the Plan document to require the payment of a pension only if there is no reasonable possibility that the participant would return to work as a referee. That construction is dictated by the plain language of the Plan, the Plan's purpose, and Internal Revenue Service regulations governing tax qualification.

The district court did not address the Committee's interpretation but instead rejected a construction that the Committee never proffered: that "termination" means a "permanent, irrevocable" separation from employment. A-299. In the district court's view, various Plan provisions show that a termination need not be "permanent" and "irrevocable." A-299–301. But the Committee never asserted

that a termination must be "permanent" and "irrevocable" for a pension to be payable. The Committee's position was that "termination of employment" turns on whether there is a reasonable possibility that the participant will return to work—not on whether the termination is "permanent" and "irrevocable." *See, e.g.*, A-177, A-265. The Plan provisions cited by the district court are completely consistent with the Committee's construction.

The Committee's construction of the Plan document is correct and, at the very least, is plausible. The district court was therefore required to defer to the Committee's interpretation. *See Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 147 (2d Cir. 2003) (affording deference to plan administrator's reasonable construction of plan).

## ARGUMENT

## I. THE DISTRICT COURT SHOULD NOT HAVE CONSIDERED MAUER'S BELATEDLY PROFFERED CONSTRUCTION OF THE PLAN.

Putting aside the merits of its decision, the district court proceeded improperly by even considering Mauer's proposed construction of "termination of employment" to mean *any* termination—regardless of whether the terminated participant is likely to return to work. Mauer never raised that proposed construction during the Plan's claims administration process. Nor did he challenge the Committee's construction of "termination of employment" to preclude payment

13

of a pension when there is a reasonable possibility that a referee would return to work. Instead, during the claims administration process, Mauer accepted the Committee's construction of the Plan's terms and argued that he was entitled to a pension under that construction. *See supra* at 7–8; A-151–152.

It was not until his summary judgment brief at the district court that Mauer argued for the first time that the Committee had misconstrued the term "terminated." A-249. Because Mauer failed to raise that argument to the Committee during the claims administration process, the argument was not exhausted and should have been rejected by the district court out of hand. *See Gomez*, 828 F.3d at 374 ("[W]e cannot consider an argument that a plan did not first have the opportunity to assess.").[6]

At the very least, the district court should have remanded for the Committee to consider Mauer's newly minted argument in the first instance. Under settled precedent, a plan's administrative committee has the primary role in construing

---

[6] Although some circuits have held that ERISA's exhaustion requirement applies only to claims, rather than issues, *see, e.g.*, *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 632–33 (9th Cir. 2008), this Circuit has not joined them. And there are strong arguments mitigating against this narrow construction of the exhaustion doctrine. *See, e.g.*, *id.* at 634–35 (Bea, J., concurring in part and dissenting in part) ("An action challenging an ERISA plan's denial of benefits . . . should not be a game of poker. Indeed, a primary purpose of the exhaustion requirement is to give an ERISA fiduciary the first opportunity to interpret its plan and fully to consider its determination before a claimant seeks court intervention.").

plan documents and making benefit determinations, and courts are limited to reviewing the administrative record and the committee's determinations. *See, e.g.*, *Conkright*, 559 U.S. at 517 (noting that precedent grants "primary interpretive authority over an ERISA plan to the plan administrator"); *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 323 (4th Cir. 2008) (noting that courts have a "secondary rather than primary role in determining a claimant's right to benefits" because of "the plan administrator's greater experience and familiarity with plan terms and provisions").

Accordingly, courts routinely require participants first to exhaust a plan's administrative procedures, reasoning that "prior fully considered actions by pension plan trustees interpreting their plans and perhaps also further refining and defining the problem in given cases may well assist the courts when they are called upon to resolve the controversies." *Amato v. Bernard*, 618 F.2d 559, 567–68 (9th Cir. 1980) (punctuation omitted). Requiring the plan's administrative committee to address issues and arguments in the first instance minimizes interference with plan administration and leads to better decisions by the courts. *Id.*; *see also Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) (explaining that the exhaustion requirement "uphold[s] Congress' desire that ERISA trustees be responsible for their actions, not the federal courts"). Consistent with those objectives, this Court limits district courts' adjudication of ERISA benefit claims

15

to reviewing the record created during the claims administration process. *See Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016) ("[W]hen reviewing claim denials, whether under the arbitrary and capricious or *de novo* standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim.").

Under those principles, the district court should not have considered Mauer's challenge to the Committee's construction of the phrase "termination of employment" before allowing the Committee an opportunity to consider it first. Because the Committee did not address the construction issue in the first instance, the district court did not have the benefit of an administrative record to review. That likely explains why the district court misconstrued the phrase "termination of employment" (*see* Point II, *infra*) and why it misunderstood the Committee's position as requiring the termination to be "permanent and irrevocable"—a position the Committee never adopted (*see supra* at 10). Had the Committee been given an opportunity to confront Mauer's argument, it would have provided an explanation which would have removed any basis for believing that the Committee was requiring a showing that the cessation of employment was "irrevocable" as a condition for paying a pension.

In short, by applying its own construction of the Plan without the benefit of the Committee's views, the district court exceeded the limited scope of review intended for district courts adjudicating benefit claims. At a minimum, the court should have remanded Mauer's claim to the Committee to address in the first instance Mauer's challenge to its construction of the Plan.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT THE PHRASE "TERMINATION OF EMPLOYMENT" UNAMBIGUOUSLY REQUIRES IMMEDIATE PAYMENT OF MAUER'S PENSION.

On the merits, the district court erred when it held that the phrase "termination of employment" in the Plan document is unambiguous and requires the Plan to pay a pension to any participant whose employment ceases—even if that employee is likely to return to work as an NBA referee. A-300–302. In the context of the Plan, the phrase "termination of employment" is ambiguous, and its most reasonable construction is the one ascribed to it by the Committee—that a Plan participant is entitled to a pension only if his employment has ceased *and* he has no reasonable prospects for returning to work as an NBA referee.

The Plan expressly provides that it is the Committee's role to interpret the Plan document. A-108. Accordingly, the Committee's construction of the Plan must be upheld unless it is arbitrary and capricious. *See Celardo*, 318 F.3d at 145 (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Here, there is nothing arbitrary or capricious about the Committee's determination that a

17

participant is ineligible to receive a pension if there is a reasonable possibility that he will return to work as an NBA referee. The district court therefore had no authority to overturn the Committee's construction.

### A. The Committee's Construction Was Reasonable.

The phrase "termination of employment" is not defined in the Plan. A-297. Accordingly, the Committee reasonably construed the term consistently with the Plan's intention to provide pensions to participants once they have fully retired from employment as an NBA referee. *See, e.g.*, A-51 (§ 8.1(a)).[7] As the Committee explained, a referee is ineligible for a pension if there is a reasonable possibility that he may return to work. A-145, A-177.

That construction is consistent with the express terms of the Plan. The Plan contemplates that pensions will be paid to referees whose employment terminates both voluntarily and involuntarily. *See, e.g.*, A-51 (§ 8.1(a) (referring to "termination of employment")); A-51–53 (§ 8.1(b)(i) (referring to "Annuity Starting Date" as the first date of the month that a referee "who has terminated [his] employment" elects to receive a pension)). A referee who terminates his employment on his own volition could reverse course and seek re-employment. The Committee could reasonably conclude, therefore, that before awarding a

---

[7] By law, the Plan could have provided for in-service distributions to participants who reached age 59-1/2, but chose not to. *See* 26 U.S.C. § 401(a)(36)(A).

18

pension to a referee who left employment voluntarily, it should consider that referee's prospects of returning to employment. The same is true for a referee like Mauer who is actively challenging the involuntary termination of his employment. In either scenario, if there is a reasonable possibility that the referee will recommence employment, the Committee can logically conclude that the referee has not been "terminated" under the Plan. As the district court acknowledged, a termination is a "complete severance of an employer-employee relationship." A-298 (citing *Termination of Employment*, Black's Law Dictionary (11th ed. 2019)). An employee with a reasonable possibility of returning to work has not experienced a complete severance of the employment relationship.

The Committee's construction of "termination of employment" is particularly reasonable in light of the risk to the Plan's tax-qualified status. Absent plan provisions to the contrary (*see supra* n. 7), the Internal Revenue Code and regulations promulgated thereunder prohibit payments by a defined benefit pension plan to participants who have not retired or reached normal retirement age. *See* 26 C.F.R. § 1.401(a)-1(b)(1)(i). That rule strongly suggests that a tax-qualified plan may not pay a lump sum benefit to a participant who has a reasonable possibility of returning to work. Although the district court made light of that concern (A-303), a private letter ruling by the Internal Revenue Service found that, in determining whether pension payments can commence, a tax-qualified plan must consider

19

whether it can be reasonably anticipated that the employee will return to work in the future. *See* I.R.S. Priv. Ltr. Rul. 201147038, 2011 WL 5893533 (Nov. 25, 2011).[8] This Court has held that a plan acts reasonably when it denies benefits if the provision of benefits could "jeopardize the Plan's tax-qualified status." *Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Local 12*, No. 22-2544, 2023 WL 4692316, at *4 (2d Cir. July 24, 2023). Here, the Committee reasonably considered the risk that the Plan could lose its tax-qualified status when construing the Plan document to preclude payment of a pension to a referee who has a reasonable possibility of returning to work.

### B. The District Court Erred in Holding That the Plan Unambiguously Requires Immediate Payment of Mauer's Pension.

Even though the Plan entrusts the Committee with construing the Plan document (A-108)—and even though, as shown above, the Committee's construction of the document was reasonable—the district court failed to defer to the Committee's interpretation of the Plan. In the court's view, the Plan document is "unambiguous," and this eliminated any need to accede to the Committee's judgment. A-300–301. According to the court, under the Plan's "unambiguous"

---

[8] While an IRS private letter ruling is not binding, it is persuasive authority. *See, e.g.*, *Davis v. Comm'r*, 716 F.3d 560, 569 n.26 (11th Cir. 2013) (noting that letter rulings are persuasive authority because they "do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws") (quoting *Hanover Bank v. Comm'r*, 369 U.S. 672, 687 (1962)).

terms, Mauer was "terminat[ed] from employment"—and thus eligible for a pension—as soon as he lost his job in September 2022.  A-302.

In reaching that conclusion, the district court committed three fundamental errors.  *First*, it mischaracterized the Committee's position regarding the meaning of "termination of employment."  *Second*, it incorrectly relied on certain Plan provisions to conclude that a participant who loses his job is immediately entitled to a pension.  In fact, those provisions are equally consistent with the Committee's view that a referee is ineligible for a pension if he has reasonable prospects for returning to work.  *Third*, the court misapplied the precedent governing when a plan document is considered "unambiguous."

### 1.    *The District Court Mischaracterized the Committee's Position.*

A plan's terms are ambiguous when they are "capable of more than one meaning."  *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen.*, 37 F.3d 55, 59 (2d Cir. 1994) (citation omitted).  Before the district court, the Committee proffered two possible interpretations of "terminated referee": (*i*) a referee who was terminated (without regard to his prospects of returning); and (*ii*) a referee who was terminated and has no reasonable prospects for returning to work as a referee.  A-265.  The district court concluded that the Plan unambiguously required the first interpretation without ever addressing the plausibility of the second.

21

Instead, the district court attacked a strawman interpretation that the Committee did not proffer: that "termination of employment" means a "permanent, irrevocable cessation" of employment. A-302. The court attributed this interpretation to the Committee six times in its opinion. A-298–299, A-302–303. But that was not the interpretation that the Committee proposed. Although the Committee noted in passing that a common definition of "termination" is a "permanent, irrevocable cessation" (A-266), the Committee's construction of the Plan turned on whether there was a reasonable possibility of the participant returning to work—not on whether the termination was "irrevocable" (which is a standard that almost no participant would satisfy), A-265. The district court never addressed the Committee's actual interpretation, however, or explained why that construction would be implausible. The court's failure to grapple with the Committee's actual position is reversible error and explains why the court failed to recognize the ambiguity in the Plan's terms.

### 2. The District Court Incorrectly Concluded That Other Plan Provisions Made the Meaning of "Termination of Employment" Unambiguous.

In concluding that the phrase "termination of employment" in Section 8.1 of the Plan is unambiguous, the district court relied almost exclusively on provisions outside of Section 8. A-290–304. But the provisions cited by the court are equally

consistent with the Committee's view that a "termination of employment" means a termination with no reasonable possibility of the referee returning to work.

The district court cited Sections 2.3, 2.4, 4.1, 7.1, 8.6, and 11C.1 of the Plan and noted that those provisions contemplate a situation where "a former referee is subsequently re-employed," including after being terminated. A-299–301. In the court's view, those provisions prove that a termination need not be "permanent and irrevocable" before a pension can be paid. A-299. After all, if a referee can be terminated and then subsequently re-hired, his termination was never irrevocable in the first place.

Again, however, the problem with the district court's logic is that it is addressing a strawman argument that the Committee never raised. The Committee never asserted that a termination must be "permanent and irrevocable" before a pension will be paid. *See* Part II.B.1, *supra*. Instead, the Committee's position is that a pension is payable only if a terminated employee has no reasonable prospects of returning to work. A-265. That position is perfectly consistent with the Plan provisions cited by the district court showing that a terminated referee might receive a pension before subsequently being re-hired.

A simple example shows why. Suppose a referee retires to take a different job outside of the NBA. Under those circumstances, the Committee might determine that the referee has no reasonable prospects of returning to work and

23

therefore award him his pension. But if, due to unforeseen circumstances, this same individual is re-hired as an NBA referee several years later, the provisions cited by the district court might apply to him. There is thus nothing inconsistent between the provisions cited by the district court and the Committee's determination that a referee must have no reasonable possibility of returning to work before receiving a pension. The Plan provisions contemplate a situation where the Committee determines that a participant has no reasonable possibility of returning to work and awards him a pension but the participant does, in fact, later become re-employed.

Furthermore, of the provisions cited by the district court, only Sections 2.3 and 7.1 refer to "terminated" employees. Section 7.1 merely sets forth the vested rights of a terminated employee and says nothing about a terminated employee returning to work. A-49–50. Section 2.3 discusses the participation rights of a former referee "who again becomes a Referee after having terminated his employment." A-30. But it says nothing to suggest that the former referee was awarded a pension when his prior employment was terminated; nor does it say anything about the circumstances under which the prior termination took place. Section 2.3's use of the term "termination" is thus not inconsistent with a construction of "termination of employment" that conditions the payment of a pension on there being no reasonable possibility of the referee returning to work.

24

### 3. *The District Court Misapplied the Case Law Concerning Ambiguity in a Plan Document.*

The district court also misconstrued the relevant precedent when it held that the term "termination of employment" is unambiguous and that its meaning is contrary to the Committee's construction. The very cases that the district court cited show that the Plan document is ambiguous and that deference to the Committee was therefore required.

The principle that this Court does not defer to a committee's construction of unambiguous plan language originated in *Heidgerd v. Olin Corp.*, 906 F.2d 903, 908–09 (2d Cir. 1990). There, the Court held that no deference to the plan administrator was warranted where the plan's language "le[ft] no room for any supposition that . . . the plan administrator had discretion as to whether or not severance benefits would be awarded." *Id.* at 909. The *Heidgerd* plan stated, for example, that "[y]ou *will* receive severance pay if you're dismissed . . . for any reason other than 'cause[,]'" and that "[b]enefits *are* payable if you must resign because of ill health." *Id.* at 908–09 (emphasis in original) (citation omitted). Given that unambiguously mandatory language, there was no room for the committee to deny the *Heidgerd* participant the benefits that the plan promised. *Id.* Here, by contrast, the phrase "termination of employment" is neither mandatory nor clear for the reasons stated above, so the *Heidgerd* rule does not apply.

25

In subsequent cases, this Court has consistently found that plan language is ambiguous where the term at issue is not defined and is susceptible to more than one meaning. *See Soto*, 26 F.4th at 121–22 (holding that the term "layoff" was ambiguous as to whether it included a termination based on disability); *O'Neil*, 37 F.3d at 58–59 (holding that the term "earnings" was ambiguous as to whether it included payments received under a stock incentive plan).

*Soto* is particularly instructive. There, the issue was whether an employee was entitled to severance benefits where her employment was terminated after she suffered serious medical issues that prevented her from working. *Soto*, 26 F.4th at 116. The plan conditioned the payment of severance benefits on the employee experiencing a "layoff," which was defined as an "involuntary termination of employment"—a phrase not defined in the plan. *Id.* at 121. The Court found that the phrase "involuntary termination of employment" was susceptible to two meanings:

> On the one hand, an 'involuntary termination' may be interpreted broadly to mean any circumstance in which an employee does not affirmatively choose to leave work but is forced to do so by external circumstances, such as physical disability. . . . But on the other hand, the phrase may reasonably be interpreted more narrowly to refer to circumstances in which an employee would otherwise continue working but for the termination forced upon her by the employer. Such a termination is 'involuntary' because it is opposed to the employee's choice to continue working. Implicit in the employee having such a choice is that she is able to continue working.

26

*Id.* at 116. Because the phrase "involuntary termination of employment" was ambiguous, the Court held that the plan administrative committee's construction should be reviewed under an arbitrary and capricious standard. *Id.* at 121–22. The Court ultimately upheld the committee's determination to deny benefits under that standard. *Id.* at 124.

The situation is nearly identical here. As explained above, there are two ways to construe the undefined phrase "termination of employment" in the Plan—one broader than the other. Under those circumstances, the district court—like the *Soto* Court—should have deferred to the Committee's construction. It was not the court's prerogative to choose the construction that it found more persuasive. *See McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (citations omitted) (holding that "the administrator's interpretation must be allowed to control" under arbitrary and capricious standard of review where parties "offer rational, though conflicting, interpretations of plan provisions").

Notably, there was a dissent in *Soto* that proffered some of the same arguments as the district court below. For example, the *Soto* dissent relied on policy arguments, contending that unless "layoff" covered those who leave employment due to a disability, it "would incentivize the Company to jettison employees any time they were '[un]*able* to continue performing services.'" *Soto*, 26 F.4th at 127 (Sullivan, J., dissenting). The district court below similarly relied

27

on policy, asserting that the Committee's construction of "termination of employment" would supposedly discourage employees from bringing wrongful termination lawsuits. A-302–303. But as the *Soto* majority held, policy arguments cannot render unambiguous a plan provision that is susceptible to more than one meaning. *Soto*, 26 F.4th at 123 n.6. Moreover, as the *Soto* majority explained, the dissent's policy arguments were "overdrawn" because "factual differences that would emerge in a real life scenario could well diminish the likelihood of such anomalous results, in the exercise of the Plan Administrator's reasoned discretion." *Id.*

Similarly here, the district court's policy concerns do not show that the phrase "termination of employment" precludes consideration of the prospects of a referee returning to work. If anything, it is the district court's holding that is bad policy. Under the district court's ruling, a referee who terminates employment on his own accord but clearly exhibits an intention to return to work would be entitled to receive his pension immediately in the form of a lump sum. Moreover, if the district court's ruling is upheld, the Plan would be obliged to provide an immediate lump sum pension benefit even to referees who file lawsuits challenging their termination and explicitly seek reinstatement as relief. *See, e.g.*, *Richardson v. Nat'l Basketball Assoc.*, No. 23-cv-6926 (S.D.N.Y. Nov. 1, 2023), ECF No. 33 ¶¶ 1, 173 (complaint challenging termination and seeking reinstatement). As the

28

majority concluded in *Soto*, the Committee should be given the discretion to address the relevant facts "that would emerge in a real life scenario" on a case-by-case basis. *Soto*, 26 F.4th at 123 n.6.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's decision granting summary judgment to Mauer as to liability on Count I of the Complaint and remand for further proceedings.

Dated:  September 3, 2024

Respectfully submitted,

*/s/ Myron D. Rumeld*

MYRON D. RUMELD
SYDNEY L. JULIANO
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
mrumeld@proskauer.com
sjuliano@proskauer.com

JOHN E. ROBERTS
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Tel: (617) 526-9813
jroberts@proskauer.com

*Attorneys for Defendant-Appellant*

**SPECIAL APPENDIX**

i

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

|  | **Page** |
|---|---|
| Judgment, dated April 22, 2024 ................................ | SPA-1 |

SPA-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH MAUER,

Plaintiff,

v.

NATIONAL BASKETBALL ASSOCIATION,
*et al.*,

Defendants.

23-CV-04937 (JPO)

FINAL JUDGMENT

It is hereby **ORDERED, ADJUDGED AND DECREED** that:

(i)     For the reasons stated in the Court's Opinion and Order dated March 13, 2024, Defendant Pension Committee of the National Basketball Association Referees' Pension Plan is liable as to Count I of the Complaint and therefore ordered to cause the National Basketball Association Referees' Pension Plan to pay the Plaintiff $2,906,922, representing Plaintiff's pension benefit expressed as a lump sum and calculated as of March 1, 2023, plus simple interest at a rate of 8.5% per annum between March 1, 2023 and the date of entry of this judgment.

(ii)    Count II of the complaint is dismissed with prejudice.

(iii)   All claims against Defendants the National Basketball Association and NBA Services Corp. are dismissed with prejudice.

It is hereby further **ORDERED, ADJUDGED, AND DECREED** that the parties retain the right to file an appeal from this judgment (except with respect to prejudgment interest) and that pending the outcome of an appeal by defendants: enforcement of this judgment is stayed; and adjudication of any application for recovery of attorneys' fees and costs pursuant to Fed. R. Civ. P. 54(d) is stayed, and the time to make such application is tolled.

SPA-2

**The Clerk is directed to mark this case as closed.**

Dated: April 22, 2024
      New York, New York

                                       J. PAUL OETKEN
                              United States District Judge