# 24-1405-CV

## United States Court of Appeals for the Second Circuit



KENNETH MAUER,

*Plaintiff-Appellee,*

v.

PENSION COMMITTEE OF THE NATIONAL BASKETBALL
ASSOCIATION REFEREES PENSION PLAN,

*Defendant-Appellant,*

NATIONAL BASKETBALL ASSOCIATION, NBA SERVICES CORP.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLEE

SHELDON KARASIK, ESQ.
*Attorneys for Plaintiff-Appellee*
224 Fifth Avenue
New York, New York 10001
(917) 587-8153
*sheldon@karasiklawoffices.com*



## CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellee Kenneth Mauer is not required to file a statement pursuant to Federal Rule of Appellate Procedure 26.1 because he is not a corporate party.

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ......................................................................... *iii*

STATEMENT OF THE ISSUES ....................................................................1

STATEMENT OF THE CASE.......................................................................2

    A. The Termination of Mr. Mauer's Employment with the NBA and
       NBA Services Corp...........................................................................2

    B. The Referees' Pension Plan ...........................................................3

    C. Mr. Mauer's Eligibility for Pension Benefits .................................5

    D. Mr. Mauer's Discrimination Lawsuit Against the NBA..................5

    E. Mr. Mauer's Application for Pension Benefits................................6

    F. The Committee's Denial of Mr. Mauer's Pension Benefits ............6

    G. The Underlying Lawsuit and the District Court's Order................8

SUMMARY OF ARGUMENT.....................................................................10

ARGUMENT .............................................................................................13

I.     The District Court Applied the Correct Standard of Review for Denial
       of ERISA Benefits. .........................................................................13

II.    The District Court Correctly Concluded the Phrase "Termination of
       Employment" was Unambiguous ..................................................15

III.   The District Court Correctly Concluded the Plan Terms Must be Ap-
       plied as Written, and Mr. Mauer Experienced a "Termination of Em-
       ployment" and Was Entitled to His Pension Benefits .....................19

IV.     Defendants Waived the Argument that the District Court Should Not
        Have Considered Mr. Mauer's Interpretation of the Plan .............................21

V.      Even if Not Waived, the District Court Correctly Considered Mr.
        Mauer's Interpretation of the Plan.................................................................22

VI.     Even if the Phrase "Termination of Employment" was Ambiguous,
        and the Committee's Determination was Reviewed Under an Arbitrary
        and Capricious Standard, its Denial Would Have Been Set Aside Be-
        cause it Was Erroneous as a Matter of Law and Unsupported by Sub-
        stantial Evidence. ...........................................................................................27

CONCLUSION .........................................................................................................36

CERTIFICATE OF COMPLIANCE.........................................................................37

# TABLE OF AUTHORITIES

***Cases***                                                              ***Page(s)***

*Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Local 12,*
No. 22-2544, 2023 WL 4692316 (2d Cir. July 24, 2023) ...................................33

*Ayotte et al. v. Nat'l Basketball Ass'n,*
Case No. 1:22-cv-09666 (S.D.N.Y.) .........................................................................5

*Buckley v. Slocum Dickson Med. Group, PLLC,*
585 Fed. App'x 789 (2d Cir. 2014) ..................................................10, 13, 14, 27

*Fay v. Oxford Health Plan,*
287 F.3d 96, 104 (2d Cir. 2002) ...............................................................16, 31, 32

*Firestone Tire & Rubber Co. v.*
Bruch, 489 U.S. 101, 115 (1989) ..........................................................................14

*Gannon v. NYSA-ILA Pension Tr. Fund & Plan,*
No. 09-cv-10368 (PGG), 2011 U.S. Dist. LEXIS 25166,
at *16 (S.D.N.Y. Mar. 11, 2011)...........................................................................23

*Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Estate, LLC,*
2023 U.S. App. LEXIS 7565, *9 (11th Cir. Mar. 30, 2023) ................................34

*In re Nortel Networks Corp. Sec. Litig.,*
539 F.3d 129, 132 (2d Cir. 2008) ...................................................................21, 22

*In re Petrobras Sec. Litig.,*
784 F. App'x 10, 14 (2d Cir. 2019) ................................................................21, 22

*Johnson v. Spencer Press of Me., Inc.,*
364 F.3d 368 (1st Cir. 2004).................................................................................33

*Law Debenture Tr. Co. v. Maverick Tube Corp.,*
595 F.3d 458, 467 (2d Cir. 2010) ..........................................................................31

*McCarthy v. DeJoy,*
  No. 20-3600, 2022 U.S. App. LEXIS 4613,
  at *3-4 (2d Cir. Feb. 22, 2022) ....................................................21, 22

*Miller v. United Welfare Fund,*
  72 F.3d 1066, 1070 (2d Cir. 1995) ........................................................28

*New York's Health & Human Serv. Emps. Union, 1199/SEIU v. Grossman,*
  2005 U.S. Dist. LEXIS 47715, *59 (E.D.N.Y. May 13, 2005) ...........................16

*O'Neil v. Ret. Plan for Salaried Employees of RKO Gen.,*
  37 F.3d 55, 59 (2d. Cir. 1994) ....................................................16, 19

*Peterson v. Continental Cas. Co.,*
  77 F. Supp. 2d 420, 427 (S.D.N.Y. 1999) ..................................................28

*Smith v. World Ins. Co.,*
  38 F.3d 1456 (8th Cir. 1994) ..............................................................33

*Soto v. Disney Severance Pay Plan,*
  26 F.4th 114 (2d Cir. 2022) ....................................................14, 18, 19

*Twentieth Century Fox Film Corp. v. Marvel Enters.,*
  220 F. Supp. 2d 289, 301 (S.D.N.Y. 2002) ..................................................31

*United States v. Ripa,*
  323 F.3d 73, 81 (2d Cir. 2003) ........................................................31, 32

*Weiss v. Parker Hannifan Corp.,*
  747 F. Supp. 1118 (D.N.J. 1990) ......................................................33, 34

### Statutes/Regulations/Miscellaneous

29 U.S.C. § 1132(a)(1)(B) ......................................................................8

29 U.S.C. § 1132(a)(3) .........................................................................9

C.F.R. § 1.401(a) -1(b)(1)(i) ................................................................32

ERISA § 502(a) ..............................................................................27

ERISA § 502(a)(1)(B) ..........................................................................8

ERISA § 502(a)(3) .............................................................................9

Merriam - Webster's Collegiate Dictionary, 10th Edition 1212 (2001)...................16

Religious Freedom and Restoration Act ......................................................5

Section 1983........................................................................................5

Termination, Black's Law Dictionary (11th ed. 2019) ............................................16

## STATEMENT OF THE ISSUES

1)      Whether the District Court erred in applying the following standard of review for denial of ERISA benefits: first, if the Plan was unambiguous, the Court must apply its plain language, and, second, if the Plan was ambiguous, the Court must review it under the arbitrary and capricious standard where the Plan granted the Committee discretionary authority to administer the Plan;

2)      Whether the District Court erred in concluding the phrase "termination of employment" was unambiguous, where, based on a review of the Plan as a whole and giving its terms their plain meanings, the phrase was not susceptible to the two meanings the Defendants ascribed to it: (a) a Referee who was terminated by the NBA, and (b) a Referee who was terminated and has no reasonable prospects for returning to work as a Referee;

3)      Whether the District Court erred in concluding the Committee violated the terms of the Plan, and Mr. Mauer was entitled to his pension benefits in accordance with Section 8.2(a)(iii) and the terms of the Plan, where the terms of the Plan must be applied as written and Mr. Mauer experienced a "termination of employment";

4)      Whether the Defendants waived the argument that the District Court should not have considered Mr. Mauer's interpretation of the Plan where Defendants failed to raise that argument with the District Court;

1

5) Whether, even if not waived, the District Court properly considered Mr. Mauer's interpretation of the Plan, since an ERISA plaintiff is not required to articulate all of his legal theories during the administrative process as a prerequisite for raising those arguments in the District Court, and since Mr. Mauer presented all the information and evidence necessary for his claim for benefits to the Committee;

6) Whether, even if the phrase "termination of employment" was ambiguous, and the Committee's determination was reviewed under an arbitrary and capricious standard, its denial of Mr. Mauer's application for pension benefits would have been set aside because it was erroneous as a matter of law and unsupported by substantial evidence.

## STATEMENT OF THE CASE

### A. The Termination of Mr. Mauer's Employment with the NBA and NBA Services Corp.

Mr. Mauer was employed by the National Basketball Association ("NBA") and NBA Services Corp. ("NSC") beginning in 1986. A-8. Before the 2021-22 season, NSC, in conjunction with the National Basketball Referees Association ("NBRA"), established a mandate requiring all employees to be inoculated against COVID-19. A-8-9. The policy was that those with sincerely-held religious objections to the COVID-19 vaccination would not be required to be vaccinated and had the opportunity to apply for a religious exemption. *Id.*

Mr. Mauer, a life-long Christian, applied for a religious exemption and requested an accommodation in September, 2021. A-9. NSC denied Mr. Mauer's request for a religious exemption in October, 2021. *Id.* NSC suspended Mr. Mauer without pay or retirement benefits for the entirety of the 2021-22 season and ultimately terminated him on September 1, 2022, based on its finding in October 2021 that his religious beliefs were not sincerely held and he failed to comply with its vaccination policy. *Id.*

**B. The Referees' Pension Plan**

Mr. Mauer participated in the NBRA Pension Plan. A-259. Participants in the Plan accrue retirement benefits based on their years of service. *Id.* Defendants acknowledged that the only "permitted distribution events under the Plan" for receipt of those benefits "are retirement from employment, or termination of employment, attainment of age 70 ½ while actively employed as a referee, disability, or death." *Id.*

Regarding termination, section 7.1(a) of the Plan states, "[i]f the employment of a Referee is terminated before his [retirement] for reasons other than death or incurring a Total Disability, he shall become a 'Terminated Referee' and shall . . . be vested in a percentage of his Accrued Benefit, based on his completed Years of Referee Service to his date of termination. *Id.*

The Plan does not provide the Committee with any discretion in determining whether a terminated referee is entitled to his/her benefit: Section 7.1(a) states clearly that a terminated referee with more than three years of service is entitled to 100% of his/her benefit. *Id.*

Accordingly, a long-tenured referee – such as Mr. Mauer – who is terminated is 100% vested and eligible to receive his full benefit under the Plan. A-11.

Section 8.2(a)(iii) then states the benefit "shall . . . commence no later than sixty (60) days after the close of the Plan Year in which a referee's "termination of employment" occurred. A-259-260.

Whether a referee returns to work after termination is irrelevant and does not affect his entitlement to pension benefits. Sections 2.3 and 2.4 of the Plan address those circumstances. A-260. Section 2.3 states "[a] former Referee who had participated in the Plan and who again becomes a Referee after having terminated his employment with the Employer, shall again participate in the Plan as of the first day of the Plan Year in which he resumes employment, provided that he is on the Referee's Roster during the Plan Year in which he resumes employment. Notwithstanding anything to the contrary herein, effective June 1, 2010, any former Referee who had participated in the Plan and who again becomes a Referee on or after June 1, 2010 shall not become eligible to again participate in the Plan."

*Id.* Similarly, section 2.4 states "[a]ny Referee who receives the full value of his Pension Benefit, as defined in Section 8.1, (or who is deemed to have received a distribution of his Pension Benefit under Section 7.1(b)) shall thereupon cease to participate in the Plan and neither he nor any person on his behalf shall have any further rights to benefits under the Plan." *Id.*

## C. Mr. Mauer's Eligibility for Pension Benefits

Defendants conceded Mr. Mauer "was discharged on September 1, 2022 for failure to inoculate against COVID-19 in accordance with" the league's vaccine requirement. *Id.* They also concede, as a result, that "there is no dispute that Mauer will be entitled to receive a retirement benefit." *Id.*

## D. Mr. Mauer's Discrimination Lawsuit Against the NBA

On November 14, 2022, Mr. Mauer filed a lawsuit against the NBA and NSC alleging three discrimination claims and claims under Section 1983 and the Religious Freedom and Restoration Act. *Id.* (citing *Ayotte et al. v. Nat'l Basketball Ass'n*, Case No. 1:22-cv-09666 (S.D.N.Y.) ("Discrimination Lawsuit")).

Mr. Mauer's Complaint in that lawsuit alleges only *monetary* damages in connection with those claims. A-261. He seeks (1) compensatory damages, which include lost wages and front pay, reputational damages, and damages for emotional pain and suffering; (2) punitive damages; (3) interest; and (4) attorney's fees and costs. *See id.*

Unlike these specific requests for relief, he does not seek — and he certainly does not want — reinstatement to his position as an NBA referee. *See id.* Mr. Mauer submitted a signed affidavit with his appeal of the denial of his pension benefits confirming that point. *Id.*

### E. Mr. Mauer's Application for Pension Benefits

On January 17, 2023, Mr. Mauer filed an application with the NBA Benefits Department to receive payment of his pension benefit under the Plan. A-9-10. Mr. Mauer cited the termination of his employment as the reason for payment of his Plan benefit. A-10. After receiving Mr. Mauer's application, the Benefits Department forwarded it to the Committee for review. A-11.

### F. The Committee's Denial of Mr. Mauer's Pension Benefits

The Committee issued a Determination on March 1, 2023. *Id.* The Committee *conceded* that, in Mr. Mauer's application, he "completed a section indicating that [he] had a ***termination of employment***," and he "***requested a lump sum payment of [his] Plan benefit on that basis***." A-144. But it denied his application for benefits. *Id.* The Committee did not contest Mr. Mauer's unambiguous interpretation of the phrase "termination of employment." *See id.* Instead, the Committee noted, that on November 14, 2022, two months before filing his application for pension benefits, Mr. Mauer filed the Discrimination Lawsuit in the Southern District of New York. *Id.* The Committee suggested that a

request in the final section of the Complaint in that Lawsuit for "such other relief as the Court deems just and proper" "may" – in addition to the monetary damages he requested "include reinstatement of employment." *Id.* Based on that faulty premise, the Committee concluded it was "not sufficiently clear" Mr. Mauer "attained a distribution event for purposes of the Plan." *Id.* It then concluded, based on this perceived "uncertainty regarding [Mr. Mauer's] intention to return to employment," that he has "not attained a distribution event under the Plan," which is required before a pension payment can be made. *Id.* It then denied his application. *Id.*

On March 21, 2023, Mr. Mauer sought review and reversal of the Committee's Determination pursuant to section 16.2 of the Plan. A-11-12. The Committee based its denial solely on the erroneous conclusion that Mr. Mauer's request for "such other relief as the Court deems just and proper" "may include reinstatement of employment." A-12. Because the Committee did not contest Mr. Mauer's interpretation of the phrase "termination of employment," Mr. Mauer addressed only the Committee's argument that he may seek reinstatement. Indeed, the Committee's conclusion was incorrect: as noted above, Mr. Mauer was not seeking, did not want, and would not accept reinstatement as an NBA referee. *Id.*

On May 19, 2023, the Committee issued a Final Determination. A-15. It concluded Mr. Mauer has "not attained a distribution event under the Plan due to

the uncertainty as to whether or not [he] might return to work as an NBA referee at some point in the future." *Id.* The Committee concluded "[t]he authorities cited in [Mr. Mauer's appeal] do not support the conclusion that the Discrimination Lawsuit Complaint's omission of a specific request for reinstatement of employment precludes [Mr. Mauer] from seeking such relief" because they are "distinguishable." *Id.* It reasoned that, so long as Mr. Mauer pursues that Lawsuit, he "retain[s] the right to seek reinstatement even though such relief was not specified in the Complaint." *Id.* It alleged – despite the fact the Discrimination Lawsuit, at the time, was well into discovery – that Mr. Mauer could always "seek reinstatement by amending the Complaint." *Id.* Accordingly, the Committee denied Mr. Mauer's "benefit claim under the Plan because it is not clear at this time that the Plan can make such payment in accordance with the Plan's terms and in compliance with all laws governing tax-qualified plans." *Id.*

The time for amending his Complaint in the Discrimination Lawsuit, however, had passed. The Amended Case Management Plan and Scheduling in that Lawsuit required all additional claims to be filed by April 3, 2023. A-15-16.

## G. The Underlying Lawsuit and the District Court's Order

After the Committee issued its Final Determination, Mr. Mauer filed a lawsuit in the District Court on June 13, 2023. A-7-18. His Complaint alleged (1) a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),

and (2) a claim for breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). A-16-17.

The Defendants filed a Motion to Dismiss on July 17, 2023. A-159-238. On July 31, 2023, Mr. Mauer filed an Opposition to that Motion and a Cross-Motion for Partial Summary Judgment. A-239-261.

The following month, on August 14, 2023, the Defendants filed a Reply in support of their Motion to Dismiss and an Opposition to Mr. Mauer's Cross-Motion for Partial Summary Judgment. A-262-283. Mr. Mauer filed a Reply Memorandum in Further Support of his Cross-Motion for Partial Summary Judgment on August 26, 2023. A-284-289.

The District Court issued an Opinion and Order on March 13, 2024. A-290-304. In that Order, the Court granted Mr. Mauer's Cross-Motion for Partial Summary Judgment on Mr. Mauer's claim for benefits.[1] A-304. The Court followed the principle that courts apply a *de novo* standard when reviewing unambiguous terms in a pension plan, giving no deference to the plan administrator's interpretation. A-294-297. However, if the terms are ambiguous *and* the plan grants discretion to the administrator, courts use an "arbitrary and capricious" standard, and then review whether the decision was reasonable. *Id.*

---

[1]The Court granted the Defendants' Motion to Dismiss, in part, on Mr. Mauer's other claim (for breach of fiduciary duty), which Mr. Mauer conceded. A-304.

Here, the Court concluded that the Plan's terms clearly indicated Mr. Mauer was entitled to his pension benefits upon termination. A-297-304. The Court determined that the Committee had broad discretion under the Plan, but it found the term "termination of employment" unambiguous and held that Mr. Mauer's separation from the NBA, even if possibly temporary, qualified as a termination under the Plan. A-296-302. The Court emphasized that the Plan did not require a permanent severance for eligibility and noted several provisions that allowed for re-employment without forfeiting benefits. A-300-304.

The Defendants timely filed a notice of appeal on March 21, 2024. A-305.

## SUMMARY OF ARGUMENT

The District Court applied the correct legal standard when reviewing the denial of ERISA benefits under the Plan. Defendants argue that the Court should have deferred to the Committee's interpretation of the Plan and applied an arbitrary and capricious standard of review. However, the Court must first determine whether the Plan language is unambiguous before considering any deference to the Committee. The Court correctly found the Plan's terms unambiguous and conducted a *de novo* review, aligning with precedent from this Circuit in *Buckley v. Slocum Dickson Med. Group, PLLC*, 585 Fed. App'x 789 (2d Cir. 2014), which establishes that courts must first give effect to the plain meaning of a plan's terms. The District Court thus rightly declined to defer to the Committee's interpretation.

The District Court also correctly concluded that the phrase "termination of employment" was unambiguous. The Plan expressly states that benefits become payable upon certain events, including termination of employment. The Defendants argued that this phrase was ambiguous, proposing two possible interpretations. However, the Court determined that the plain dictionary definitions of "termination" did not require permanence or irrevocability, and that whether a referee returns to work was irrelevant because the Plan allowed for re-employment after termination, which did not affect a participant's eligibility for benefits. Therefore, the District Court was correct in concluding that the phrase was unambiguous and that the Plan terms must be applied as written.

Because the District Court found that the Plan language was clear, it correctly concluded that Mr. Mauer had experienced a "termination of employment" and was entitled to receive his pension benefits. The District Court rejected the Defendants' argument that Mauer's potential re-employment could invalidate his eligibility because, in part, it would lead to absurd results. The Court affirmed that uncertainty surrounding re-employment prospects should not change the conclusion that Mr. Mauer was entitled to his benefits based on his termination.

Defendants waived their argument that the District Court should not have considered Mr. Mauer's interpretation of the Plan. They failed to raise this argument before the District Court, and appellate courts generally do not consider

issues not raised in lower courts. Therefore, this argument should be treated as waived and cannot be considered on appeal.

Even if the argument was not waived, the District Court correctly considered Mr. Mauer's interpretation. The Defendants incorrectly assert that Mr. Mauer needed to exhaust his argument concerning the interpretation of the phrase "termination of employment" during the administrative process. The Committee conceded his straightforward interpretation of that phrase and instead denied his application for benefits for a different reason (the alleged possibility he could return to work); if it had contested Mr. Mauer's interpretation, he would have addressed it. Nevertheless, during the administrative process, ERISA plaintiffs need only exhaust *claims*, not specific *issues* or *legal theories*. Mr. Mauer provided sufficient information during the administrative process for the Committee to address his claim for benefits, and the District Court appropriately reviewed the plain meaning of the phrase under a *de novo* standard.

Finally, even if the Court had applied the arbitrary and capricious standard, the Committee's decision to deny Mr. Mauer's benefits would have been set aside. The Committee's denial lacked substantial evidence, as the Plan's unambiguous language clearly entitled Mr. Mauer to benefits. The suggestion that Mr. Mauer's ongoing lawsuit for potential re-employment created uncertainty regarding his termination was erroneous and unsupported by the record. Mr. Mauer's lawsuit did

not seek reinstatement but only monetary damages.  Therefore, the Committee's decision was unsupported by law or evidence, and the District Court was correct to grant Mr. Mauer's Cross-Motion for Summary Judgment.

This Court should affirm the District Court's March 13, 2024 Order.

## ARGUMENT

## I.    The District Court Applied the Correct Standard of Review for Denial of ERISA Benefits.

The Defendants fail to challenge the District Court's application of the standard of review, focusing instead on obfuscating the Court's conclusion concerning the Plan language and arguing it should have deferred to the Committee's interpretation in the first instance.  Defendants' ("Def.") Brief at 13-17.  This argument ignores this Court's decision in – and the District Court's reliance on – *Buckley v. Slocum Dickson Med. Group, PLLC*, 585 Fed. Appx. 789 (2d Cir. 2014), and its progeny.

The District Court held that the ***first*** step in a Court's review of a denial of ERISA benefits is it "gives effect to [a plan's] unambiguous meaning to the extent that one exists."  A-294 (quoting *Buckley*, 585 Fed. Appx. at 792).  This step occurs *before* a court decides whether to defer to a plan administrator.  *See* Def. Brief at 17.  A court "applies a '*de novo* standard of review' in reviewing a plan administrator's interpretation of 'unambiguous plan terms.'"  A-295 (quoting *Buckley*, 585 Fed. Appx. at 792).  If the Plan language is unambiguous, the District

Court must determine the Committee was "bound to apply the plain language . . . and lacked any discretion to depart from it." *Buckley*, 585 Fed. Appx. at 792. Defendants agree with this principle, *see* Def. Brief at 25 ("this Court does not defer to a committee's construction of unambiguous plan language"), and cite case law – *Soto v. Disney Severance Pay Plan*, 26 F.4th 114 (2d Cir. 2022) – that supports it.

If, on the other hand, "the plan language is ambiguous, the Court also reviews it 'under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" A-295 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). If a plan administrator has discretionary authority, the plan is then "reviewed under the arbitrary and capricious standard" and "is limited to the administrative record." A-295-296.

It is this latter step that the Defendants insist the District Court should have started with: it should have deferred to the Committee's interpretation of the Plan language because the Committee had broad discretion under the Plan; the Committee concluded the Plan language was ambiguous; and the District Court should have reviewed the Committee's interpretation under the arbitrary and capricious standard. Def. Brief at 17-18. This argument, of course, ignores the holding in *Buckley* (and other cases from this Circuit) that (1) the *District Court* –

14

not the Committee – first determines whether the Plan language was ambiguous, and (2) the rest of the analysis proceeds from there. *See supra* pp. 14-15. The District Court applied the correct standard of review.

## II. The District Court Correctly Concluded the Phrase "Termination of Employment" was Unambiguous

The Plan states – and Defendants conceded below – that benefits are payable only upon one of several distribution events: retirement, disability, termination of employment, or death. A-10, A-33-50, A-170. If a participant has not attained a distribution event, he/she is not eligible to be paid his/her benefit from the Plan. *See id.*

Section 7.1(a) of the Plan states, "[i]f the employment of a Referee is terminated before his [retirement] for reasons other than death or incurring a Total Disability, he **_shall_** become a 'Terminated Referee' and **_shall . . . be vested in a percentage of his Accrued Benefit, based on his completed Years of Referee Service to his date of termination_**. A-49 (emphasis added). Section 8.2(a)(iii) states the benefit then "**_shall . . . commence no later than sixty (60) days after_** the close of the Plan Year in which" a referee's "termination of employment" occurred. A-53, A-297 (emphasis added).

The Defendants argued that the phrase "termination of employment" is ambiguous because it is susceptible of two meanings: (a) "a Referee who was

terminated by the NBA," and (b) "a Referee who was terminated and has no reasonable prospects for returning to work as a Referee." A-297-298.

"To determine whether the phrase 'termination of employment' is ambiguous," the District Court explained, "[t]his Court will review the Plan as a whole, giving terms their plain meanings." A-298 (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002)). "Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . . agreement." A-298 (quoting *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen.*, 37 F.3d 55, 59 (2d. Cir. 1994)). "Whether contract language is ambiguous is a question of law that is resolved 'by reference to the contract alone.'" *Id.*

The District Court referenced two dictionary definitions for "termination of employment": (1) "the complete severance of an employer-employee relationship," and (2) "To discontinue the employment of." A-298 (quoting *Termination*, Black's Law Dictionary (11th ed. 2019), *and New York's Health & Human Serv. Emps. Union, 1199/SEIU v. Grossman*, 2005 U.S. Dist. LEXIS 47715, *59 (E.D.N.Y. May 13, 2005) (quoting Merriam - Webster's Collegiate Dictionary, 10th Edition 1212 (2001)). The Court rejected Defendants' contention that a "termination of employment" must be "permanent" and "irrevocable" because neither definition

above requires either condition; instead, both definitions merely require that the severance be "complete."  A-298-299.

Furthermore, whether a referee returns to work was irrelevant because the Plan addresses that contingency, and doing so shows it does not affect whether one is "terminated" or is entitled to pension benefits upon termination.  The Court noted that the Plan "does not require that severance of the employer-employee relationship be permanent and irrevocable."  A-299.  Rather, it "explicitly contemplates that a former referee could be re-hired by the employer" and "does not distinguish among referees that became 'former referees' through termination or by other means."  For example, the Court referenced Sections 2.3 and 2.4 of the Plan, which address the possibility that a "former Referee" could return to employment at some point in the future.  *Id.*  Section 2.3 states "[a] former Referee who had participated in the Plan and who again becomes a Referee after having terminated his employment with the Employer, shall again participate in the Plan as of the first day of the Plan Year in which he resumes employment, provided that he is on the Referee's Roster during the Plan Year in which he resumes employment.  Notwithstanding anything to the contrary herein, effective June 1, 2010, ***any former Referee who had participated in the Plan and who again becomes a Referee on or after June 1, 2010 shall not become eligible to again participate in the Plan***."  *Id.* (emphasis added)  Similarly, section 2.4 states "[a]ny

17

Referee who receives the full value of his Pension Benefit, as defined in Section 8.1, (or who is deemed to have received a distribution of his Pension Benefit under Section 7.1(b)) ***shall thereupon cease to participate in the Plan and neither he nor any person on his behalf shall have any further rights to benefits under the Plan***." *Id.* (emphasis added)  The Court also references "[o]ther provisions" that "address the situation in which a former referee is subsequently reemployed, including after termination of employment."  A-299-300 (citing Plan sections 4.1(s), 4.1A(m), 7.1(a)-(d), 8.6, and 11C.1(e)).

Accordingly, the District Court "conclude[d] that the phrase 'termination of employment' is unambiguous and cannot bear the meaning Defendants have ascribed to it."  A-300-301.

Defendants' reliance on *Soto* to argue that phrase is ambiguous is misplaced. *See* Def. Brief at 26-29.  The phrase in *Soto* – "*involuntary* termination of employment" – was, indeed, ambiguous because it was unclear whether (1) it broadly meant "any circumstance in which an employee does not affirmatively choose to leave work but is forced to do so by external circumstances, such as physical ability" *or* (2) it referred to the *legal* meaning of the term: "circumstances in which an employee would otherwise continue working but for the termination forced upon her by the employer."  *Soto*, 26 F.4th at 121.  By contrast, the phrase at issue here – "termination of employment" – contains no modifying adjective (e.g.,

"involuntary") and was defined by the District Court to mean either "the complete severance of an employer-employee relationship" or "To discontinue the employment of." A-298. Neither definition introduces the condition Defendants insist must be included: that there be "no reasonable possibility of the referee returning to work." *See* Def. Brief at 23. Accordingly, it was not susceptible of two meanings and, thus, is not ambiguous. *Soto* does not apply here.[2]

Defendants' remaining argument that "this Court has consistently found that plan language is ambiguous where the term at issue is not defined and is susceptible to more than one meaning," *see* Def. Brief at 26, cites just two examples: *Soto*, which – as explained above – interprets a very different phrase than the one here; and *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen.*, 37 F.3d 55 (2d Cir. 1994), which construes the word "earnings," not "termination." *Id.* at 58. That argument, too, is erroneous.

## III. The District Court Correctly Concluded the Plan Terms Must be Applied as Written, and Mr. Mauer Experienced a "Termination of Employment" and Was Entitled to His Pension Benefits

Because the District Court held the Plan language was unambiguous, it held "the Committee is not entitled to deference" and "the terms of the Plan must be

---

[2]Defendants also argue, based on a dissent in *Soto*, that "policy arguments cannot render unambiguous a plan provision that is susceptible to more than one meaning," and the District Court relied on such arguments to conclude the phrase "termination of employment" was unambiguous. Def. Brief at 28. The District Court did not proceed in that fashion. Rather, it concluded *first* that the phrase was unambiguous, and *then* it relied on secondary policy arguments to reinforce its conclusion. *See supra* pp. 14-15, A-302-303.

19

applied as written." A-301-302. It, therefore, concluded Mr. "Mauer experienced a termination of employment." A-302. As explained above, section 7.1(a) of the Plan states a terminated Referee ***shall . . . be vested in a percentage of his Accrued Benefit***" and the benefit then "***shall . . . commence no later than sixty (60) days after*** the close of the Plan Year in which" a referee's "termination of employment" occurred. A-53, A-297 (emphases added). Accordingly, the Court concluded Mr. Mauer is "entitled to his pension benefits in accordance with Section 8.2(a)(iii) and the terms of the Plan." A-302.

The District Court further reasoned that the Defendants' contrary reading "that a terminated referee cannot receive benefits . . . unless there is certainty that he will not be re-employed 'would lead to absurd results.'" A-302. Cycling through the examples Mr. Mauer referenced in his summary judgment filing, the Court agreed that "[i]t is not clear under what circumstances it would be *certain* that a terminated referee would never be re-employed by the employer." *Id.* Rather, Defendants presented "no justification" for treating any "alleged uncertainty surrounding [Mr.] Mauer's prospect of re-employment" – including whether or not he would seek re-instatement in his Discrimination Lawsuit against the NBA – "any differently than the uncertainty surrounding any former referee's prospect of re-employment." *Id.*

20

The District Court, therefore, correctly concluded "there is no genuine dispute of material fact that the Committee violated the plain terms of the Plan" and granted Mr. Mauer's Cross-Motion for Summary Judgment on his claim for benefits. A-304.

## IV. Defendants Waived the Argument that the District Court Should Not Have Considered Mr. Mauer's Interpretation of the Plan

As referenced above, the Defendants' first argument contends that the District Court should not have considered Mr. Mauer's interpretation of the Plan (that the phrase "termination of employment" is unambiguous, and the Court should apply the plain language of the Plan) and, instead, should have deferred to the Committee's interpretation in the first instance. Def. Brief at 13-17. The Defendants failed, however, to raise this argument with the District Court.

"'[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.'" *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008). "To the extent that [a party] attempts to raise new arguments in his appellate brief, they are either insufficiently developed for our consideration or appropriately treated as waived because he failed to raise them before the district court." *McCarthy v. DeJoy*, No. 20-3600, 2022 U.S. App. LEXIS 4613, at *3-4 (2d Cir. Feb. 22, 2022); *see also In re Petrobras Sec. Litig.*, 784 F. App'x 10, 14 (2d Cir. 2019) ("Generally, a federal

appellate court does not consider an issue not passed upon below.") (internal citations and citation marks omitted).

Here, the Defendants failed to raise this argument in their Opposition to Mr. Mauer's Motion for Partial Summary Judgment. *See* A-262-283. Accordingly, they have waived it, and this Court may not consider it for the first time on appeal. *See McCarthy*, 2022 U.S. App. LEXIS at *3-4 (declining to address plaintiff's arguments that the district court "committed mistakes" and "was biased" and that there were violations of the Rehabilitation Act because, in part, he did not present those arguments to the district court); *In re Petrobras Sec. Litig.*, 784 F. App'x at 14-15 (holding the plaintiffs waived their argument concerning a sub-class conflict because they failed to raise it in the district court); *In re Nortel*, 539 F.3d at 132 (argument that fee-award scheme was altered was not raised below and, thus, was not preserved for appeal).

## V. Even if Not Waived, the District Court Correctly Considered Mr. Mauer's Interpretation of the Plan

Defendants argue that Mr. Mauer failed to raise the argument that the phrase "termination of employment" was unambiguous before the Committee, and, therefore, he failed to exhaust that argument, and the District Court should have rejected it. Def. Brief at 14-17. Defendants even go so far as to say that, "[a]lthough some circuits have held that ERISA's exhaustion requirement applies

22

only to claims, rather than issues . . . this Circuit has not joined them." *Id.* at 14 n.6. This is incorrect.

"[I]t is clear that the case law does not require an ERISA plaintiff to articulate all of his or her legal theories during the administrative process as a prerequisite for using these arguments in district court." *Gannon v. NYSA-ILA Pension Tr. Fund & Plan*, No. 09-cv-10368 (PGG), 2011 U.S. Dist. LEXIS 25166, at *16 (S.D.N.Y. Mar. 11, 2011). "Courts throughout the nation have uniformly adopted the rule that ERISA requires only claim/remedy exhaustion, not issue exhaustion." *Id.* Rather, "[u]nder ERISA, 'an issue or theory that is raised in court proceedings" need only "be based on information or evidence that was actually before the plan administrators." *Id.* at *14 (internal citations and citations marks omitted).

In *Gannon*, the defendants argued (like the Defendants here) that the action should be stayed and the matter remanded to the Board of Trustees for a pension fund to consider plaintiff's argument that a recent court decision required that he receive credit for all his years of service for purposes of calculating his monthly pension benefit. *Id.* at *13. The defendants argued the plaintiff "deliberately chose not to present" that argument during the administrative process – in order to evade the deferential standard of review generally applicable to a Plan administrators' determinations . . . and" argued – like the Defendants here – "that the Trustees are

entitled to consider Plaintiff's present legal theory of recovery in the first instance." *Id.* The District Court rejected the defendants' argument and concluded the plaintiff's letter challenging the calculation of his monthly pension benefit "clearly set forth the basis for" his claim because it "asserted that [he] should receive a pension based on 36 rather than 31 years of service." *Id.* at *15. The Court concluded "[t]here is thus no question that Plaintiff put Defendants on notice of their alleged error." *Id.* The Court reasoned that the plaintiff's failure to reference the aforementioned court decision in his letter "presents no obstacle to judicial review" because he "presented the information and evidence necessary to his claim during the administrative proceedings." *Id.* at *16-17.

Here, too, Mr. Mauer presented all the information and evidence necessary for his claim for benefits to the Committee. The Committee *conceded* that, in Mr. Mauer's January 17, 2023, application to receive payment of his pension benefit, he "completed a section indicating that [he] had a ***termination of employment***," and he "***requested a lump sum payment of [his] Plan benefit on that basis***." A-144. The Committee's determination of Mr. Mauer's application further conceded that, "[o]n September 1, 2022, [Mr. Mauer] ceased to be employed as an NBA referee." A-145. It then repeated the same concession above – that, in Mr. Mauer's application, he "completed a section indicating that the reason for payment of your Plan benefit is ***termination of employment***, and [he] requested a

24

lump sum payment of [his] Plan benefit on that basis." *Id.* (emphasis added) Accordingly, the Committee was aware Mr. Mauer was claiming he had suffered a "termination of employment" under the Plan, was applying that phrase as written, and concluded he should be paid his pension benefits on that basis. *See id.*

After making that concession, the Committee understandably elected not to address Mr. Mauer's straightforward interpretation of the phrase "termination of employment." A-144-145. It instead referenced its discretion under the Plan and its determination that "it is not sufficiently clear that [Mr. Mauer] attained a distribution event" because the relief he seeks in the Discrimination Lawsuit "may include [his] reinstatement of employment as an NBA referee," thereby creating "uncertainty regarding [Mr. Mauer's] intention to return to employment." *Id.* The Committee cited no other rationale for denying Mr. Mauer's application for benefits, including his assertion that he had suffered a "termination of employment" and should be paid his benefits. *See* A-144-146.

In his appeal of the Committee's determination, Mr. Mauer addressed only the Committee's bizarre conclusion that, despite the plain meaning of the phrase "termination of employment," his employment was not *actually terminated* because he could potentially seek reinstatement. *See* A-150-153. Because the Committee did not address the lack of ambiguity with the phrase "termination of

employment," Mr. Mauer did not address it. If the Committee had not conceded that point, Mr. Mauer would certainly have contested it.

Mr. Mauer's arguments were, nevertheless, premised on the fact that he was a "terminated employee." A-152. He argued, *in the alternative*, that there was no uncertainty regarding the possibility he would return to work because he was not seeking reinstatement. A-152. He concluded at the end of his appeal that "[t]here is no question the NBA terminated [his] employment," and the Committee should "reverse its improper denial and grant [his] application for pension benefits." *Id.*

In the Committee's Final Determination, it once again conceded that Mr. Mauer "indicated" in his application for benefits that he was "eligible to receive payment of [his] pension benefit because [he] had incurred a ***termination of employment*** as a National Basketball Association ('NBA') referee." A-156 (emphasis added). The Committee falsely alleged, however, that Mr. Mauer did "not dispute the Determination's underlying premise that, if there is uncertainty as to your return to employment as an NBA referee, a distribution event has not been attained." A-157. Rather, Mr. Mauer had consistently asserted he suffered a "termination of employment." *See supra* pp. 25-27.

Despite Defendants' newfound insistence that Mr. Mauer has not exhausted his administrative remedies and that ERISA's exhaustion requirement applies to "issues" and not "claims," Def. Brief at 14, the Committee concluded differently at

the end of its Final Determination. *See* A-158. It stated Mr. Mauer "may bring an action under Section 502(a) of ERISA with respect to ***the claim***." *Id.*

Mr. Mauer presented all the information and evidence necessary for his claim for benefits to the Committee. He claimed he had suffered a "termination of employment" under the Plan and was, therefore, entitled to the immediate payment of his pension benefits. That Mr. Mauer did not specifically argue whether or not the phrase "termination of employment" was unambiguous did not preclude the District Court from reviewing that issue. Defendants were aware and on notice that Mr. Mauer was relying on that phrase as the basis for his application for benefits. It should have come as no surprise to the Defendants that the District Court – which is tasked with reviewing unambiguous plan terms *de novo*, *see Buckley*, 585 Fed. Appx. at 792 – would address whether Mr. Mauer's interpretation of that phrase was correct. Accordingly, Mr. Mauer exhausted his claim for benefits before the Committee.

**VI.  Even if the Phrase "Termination of Employment" was Ambiguous, and the Committee's Determination was Reviewed Under an Arbitrary and Capricious Standard, its Denial Would Have Been Set Aside Because it Was Erroneous as a Matter of Law and Unsupported by Substantial Evidence.**

Even under an arbitrary and capricious standard, a denial may be set aside if "there has been a clear error of judgment," that is, the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law."

*Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir. 1995). Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." *Id.* at 1072. Accordingly, under this standard, the Committee's "discretion is not without limits." *Peterson v. Continental Cas. Co.*, 77 F. Supp. 2d 420, 427 (S.D.N.Y. 1999). "Where the plain language of the plan points clearly to one interpretation, an Administrator would be acting in an arbitrary and capricious manner if he were to adopt a contrary interpretation." *Id.*

For the reasons stated above, even with the alleged discretion accorded it under the Plan, the Committee's denial was erroneous as a matter of law. *See supra* pp. 14-15. The Plan language was unambiguous, Mr. Mauer suffered a "termination of employment," and, as a terminated referee, he "***shall . . . be vested***," and his benefit "***shall . . . commence***" within 60 days after the end of the Plan year in which he was terminated. A-49-53 (emphases added). Even if the Committee had discretion, the plain language of the Plan could not permit it to deviate from this conclusion.

Defendants' contrary interpretation of the phrase "termination of employment" to mean a Referee who was terminated *and* has no reasonable prospects for returning to work as a Referee is premised on language not contained

28

in or addressed by the Plan.  For example, Defendants argue that this "construction is consistent with the express terms of the Plan" because, in part, "[t]he Plan contemplates that pensions will be paid to referees whose employment terminates both voluntarily and involuntarily," citing sections 8.1(a) and (b)(i) of the Plan. Def. Brief at 23.  Defendants reason further that "[a] referee who terminates his employment on his own volition could reverse course and seek re-employment." *Id.*  Accordingly, "[t]he Committee could reasonably conclude . . . that before awarding a pension to a referee who left employment voluntarily, it should consider that referee's prospects of returning to employment." *Id.* at 24.

But the Plan doesn't say that.  Rather, the provisions cited above *support* the District Court and Mr. Mauer's plain language interpretation of the phrase "termination of employment."  Neither section permits the Committee to condition the conclusion that a Referee suffered a "termination of employment" on whether that termination was voluntary, involuntary, permanent, or temporary.  *See* A-51. Nor does the Plan condition that conclusion on whether the termination was "irrevocable."  *Id.*  Thus, even if the District Court incorrectly attributed that term to Defendants' position (it did not),[3] *see* Def. Brief at 22-23, it does not matter.

---

[3]Defendants allege the District Court "attacked a strawman interpretation that the Committee did not proffer: that 'termination of employment' means a 'permanent, irrevocable cessation' of employment." Def. Brief at 22 (quoting A-302).  This is incorrect.  Defendants expressly argued in their Reply below that "'termination,' as used in the Plan and elsewhere, ___is generally understood to mean a permanent, irrevocable cessation___." A-266 (emphasis added).

29

It bears repeating that the Plan unequivocally states that, if a referee is terminated, he "***shall*** become a 'Terminated Referee," ""***shall*** . . . be vested" in his benefit, and the benefit "***shall . . . commence*** no later than sixty (60) days after the close of the Plan Year in which" his termination occurred. A-49, A-53 (emphases added). If the Plan included a condition of the kind Defendants suggest, it would have stated a terminated referee "shall . . . be vested in a percentage of his Accrued Benefit *unless there is uncertainty as to whether he might return to work*," or the benefit "shall . . . commence no later than sixty (60) days after the close of the Plan Year *unless there is uncertainty as to whether he might return to work*."

Indeed, as the District Court noted, several provisions in the Plan – including Sections 2.3 and 2.4 – *do* address the possibility that a referee could return to employment at some point in the future. *See supra* p. 18. Sections 2.3 and 2.4 directly address whether, and under what circumstances, a referee may participate in the Plan if he returns to employment: they expressly prohibit participation if a referee is reinstated. A-299. Accordingly, whether a referee returned to work was irrelevant, and if there was an occasion for the Committee to condition the receipt of pension benefits on whether a referee intends to return to work, the Plan would have included such language and provided that guidance.

Defendants' arguments that these Plan provisions support *their* view that the phrase "termination of employment" "means a termination with no reasonable

possibility of the referee returning to work" or that their interpretation is not inconsistent with the District Court's interpretation miss the point. *See* Def. Brief at 23-24. The reason the District Court referenced those Plan provisions was because, "[t]o determine whether the phrase 'termination of employment' is ambiguous," it must "review the Plan ***as a whole***, giving terms their plain meanings." A-298 (quoting *Fay*, 287 F.3d at 104) (emphasis added). Doing so provides several benefits that aid the Court's analysis, such as an understanding of the context in which a given phrase appears and relationships between different clauses, *see*, *e.g.*, *Law Debenture Tr. Co. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) ("the task of the court is to determine whether such clauses are ambiguous when read ***in the context of the entire agreement***") (internal citations and citation marks omitted) (emphasis added); the ability to harmonize clauses to avoid conflicts and give effect to every part of the document, *see*, *e.g.*, *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 220 F. Supp. 2d 289, 301 (S.D.N.Y. 2002) ("courts must harmonize the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole") (internal citations and citation marks omitted); and a path towards constructing an interpretation that is consistent with the purpose of the document as a whole. *See*, *e.g.*, *United States v. Ripa*, 323 F.3d 73, 81 (2d Cir.

2003) ("If the text of a statute is ambiguous, then we must construct an interpretation consistent with the primary purpose of the statute as a whole.").

Here, determining whether the phrase "termination of employment" is ambiguous, (or, as Defendants contend, "means a termination with no reasonable possibility of the referee returning to work," Def. Brief at 23), necessarily requires reviewing the Plan as a whole. *See Fay*, 287 F.3d at 104. That review demonstrates that the Plan contemplates instances when a referee is terminated but could return to work and provides guidance on whether a referee who returns to work can participate in the Plan. However, it does not, in any of those instances or anywhere else in the Plan, *condition* termination on there being "no reasonable possibility of the referee returning to work." The Plan merely provides a contingency if a referee returns to work. That stated contingency resolves whether the phrase "termination of employment" has more than one meaning and – most importantly – eliminates any notion that it *must always* include "no reasonable possibility of the referee returning to work."

The Defendants' repeated reliance, *see* Def. Brief at 19, on the Plan's "tax-qualified status" to support their interpretation is equally misplaced. Section 401 (a) of the Internal Revenue Code and the regulations promulgated thereunder (at C.F.R. § 1.401(a) -1(b)(1)(i)) prohibit distribution of pension benefits prior to severance of employment. Mr. Mauer's employment was severed two years ago, in October

32

2022. If he receives his pension benefits, as he should, the Plan – specifically, Sections 2.3 and 2.4 – would prohibit him from participating in it once more if he were to return to work. *See supra* p. 18; A-303. The case cited by Defendants, *Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Local 12*, No. 22-2544, 2023 WL 4692316 (2d Cir. July 24, 2023) is irrelevant since it involved a claimant who was denied benefits because he continued working, albeit under different circumstances.

Additionally, the Committee's suggestion that a request in the final section of Mr. Mauer's Complaint in his Discrimination Lawsuit against the NBA for "such other relief as the Court deems just and proper" "may" – in addition to the monetary damages he requested – "include reinstatement of employment" was also erroneous as a matter of law.

The cases cited by Mr. Mauer in his appeal of the Committee's denial of his application for benefits – *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368 (1st Cir. 2004), *Smith v. World Ins. Co.*, 38 F.3d 1456 (8th Cir. 1994), and *Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118 (D.N.J. 1990) – all hold that a terminated employee must elect between reinstatement and front pay. *See Johnson*, 364 F.3d at 379 (("Front pay . . . is 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'"); *Smith*, 38 F.3d at 1466 ("Front pay may be awarded in lieu of, but not in addition,

33

to reinstatement."); *Weiss*, 747 F. Supp. at 1135 ("Front pay may be awarded as an equitable remedy in lieu of reinstatement when plaintiff's return to the work place would cause disharmony and acrimony.").

Mr. Mauer elected front pay in his Prayer for Relief (and other sections of the Complaint in that lawsuit) and waived reinstatement. Taking the Committee at face value, even if he could somehow change his mind and choose to seek reinstatement, he would have been prohibited from doing so because it would prejudice the defendants in that case. *See Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Estate, LLC*, 2023 U.S. App. LEXIS 7565, *9 (11th Cir. Mar. 30, 2023) ("A party may be awarded the damages established by the pleadings or the facts proven at trial even though only injunctive relief was demanded in the complaint, . . . ***unless the failure to demand such relief prejudiced the opposing party***.") (emphasis added). At the time, the parties were seven months into discovery in that lawsuit, and the deadline for amending pleadings had expired four months before. A-154-155. Thus, although courts can award equitable relief such as reinstatement, Mr. Mauer's Complaint waived such relief, and the time for amending pleadings had long since past.

These reasons also support the notion that there was substantial evidence in the administrative record that Mr. Mauer did not seek, did not want, and would not accept reinstatement as an NBA referee. The Committee's suggestion otherwise

was not supported by the evidence.  Mr. Mauer's Complaint in that lawsuit alleges only *monetary* damages in connection with the claims he asserts.  He seeks (1) compensatory damages, which include lost wages and front pay, reputational damages and damages for emotional pain and suffering; (2) punitive damages; (3) interest; and (4) attorney's fees and costs.  Unlike these specific requests for relief, he does not seek — and he certainly does not want — reinstatement to his position as an NBA referee.  Mr. Mauer also submitted a signed affidavit with his appeal of the Committee's denial confirming that point.  A-154-155.  These facts clearly demonstrate there is no more of a dispute concerning the finality of Mr. Mauer's termination than in other scenarios Defendants neglected to address where a terminated referee could always return to work if the NBA reinstates them.

## CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's

Order granting Mr. Mauer's Cross-Motion for Partial Summary Judgment.

Dated:  October 3, 2024
       New York, New York

                              Respectfully submitted,

                              KENNETH MAUER,

                              By His Attorneys,

                              LAW OFFICES OF
                                SHELDON KARASIK, P.C.

                              */s/Sheldon Karasik*
                              Sheldon Karasik (SK-4020)
                              244 Fifth Avenue, Suite Q249
                              New York, NY 10001
                              Direct Dial: (917) 587-8153
                              Email: sheldon@karasiklawoffices.com

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains fewer than 13,000 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using Microsoft Word in Times New Roman, a proportionally spaced typeface.

Dated:  October 3, 2024                   */s/Sheldon Karasik*_____
                                               Sheldon Karasik, Esq.

# CERTIFICATE OF SERVICE

I certify that, on October 3, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court of the United States Court of Appeals for the Second Circuit by using the Court's CM/ECF system, which will send notice of the filing to all counsel of record.

Dated:  October 3, 2024                 */s/Sheldon Karasik*
                                        Sheldon Karasik, Esq.