# 24-1405-cv

## United States Court of Appeals

*for the*

## Second Circuit

KENNETH MAUER,

*Plaintiff-Appellee,*

– v. –

PENSION COMMITTEE OF THE NATIONAL
BASKETBALL ASSOCIATION REFEREES PENSION PLAN,

*Defendant-Appellant,*

NATIONAL BASKETBALL ASSOCIATION, NBA SERVICES CORP.,

*Defendants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

### REPLY BRIEF FOR DEFENDANT-APPELLANT

JOHN E. ROBERTS
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9813

MYRON D. RUMELD
SYDNEY JULIANO
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
(212) 969-3021

*Attorneys for Defendant-Appellant*

 (800) 4-APPEAL • (333626)

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT .............................................................................................................3

I. THE DISTRICT COURT SHOULD NOT HAVE DETERMINED WHETHER THE PLAN WAS AMBIGUOUS WITHOUT AN ADMINISTRATIVE RECORD FIRST ADDRESSING THIS ISSUE. ........3

    A. Mauer Erroneously Focuses on the Standard of Review. .....................3

    B. Mauer Did Not Challenge the Committee's Interpretation of the Plan at the Administrative Level. ...............................................................4

    C. The Committee Did Not Forfeit the Exhaustion Argument..................6

II. THE DISTRICT COURT ERRED IN HOLDING THAT THE PHRASE "TERMINATION OF EMPLOYMENT" IS UNAMBIGUOUS. ..................8

    A. Mauer Has Not Demonstrated that the Committee's Construction of the Plan Was Implausible.....................................................................8

    B. Mauer Does Not Overcome the Flaws in the District Court's Construction of the Plan. .....................................................................10

III. THE COMMITTEE'S DETERMINATION SHOULD BE UPHELD UNDER THE ARBITRARY AND CAPRICIOUS STANDARD. ..............14

CONCLUSION .......................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aracich v. Bd. of Trs. of Emp. Benefit Funds of Heat & Frost Insulators Local 12*,
   No. 22-2544, 2023 WL 4692316 (2d Cir. July 24, 2023) ............................. 9, 10

*Buckley v. Slocum Dickson Med. Grp., PLLC*,
   585 F. App'x 789 (2d Cir. 2014) ......................................................................... 4

*Celardo v. GNY Auto. Dealers Health & Welfare Trust*,
   318 F.3d 142 (2d Cir. 2003) .............................................................................. 14

*Gannon v. NYSA-ILA Pension Tr. Fund & Plan*,
   No. 09-cv-10368, 2011 WL 868713 (S.D.N.Y. Mar. 11, 2011) ......................... 6

*Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*,
   819 F.3d 42 (2d Cir. 2016) .................................................................................. 4

*Heidgerd v. Olin Corp.*,
   906 F.2d 903 (2d Cir. 1990) .............................................................................. 12

*O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen.*,
   37 F.3d 55 (2d Cir. 1994) ............................................................................ 12, 13

*Soto v. Disney Severance Pay Plan*,
   26 F.4th 114 (2d Cir. 2022) ......................................................................... 12, 13

*Teutscher v. Woodson*,
   835 F.3d 936 (9th Cir. 2016) ............................................................................ 14

**PRELIMINARY STATEMENT**

Mauer's answering brief mischaracterizes the Committee's[1] arguments for overturning the district court's order granting him immediate payment of his pension, regardless of his prospects for returning to work as an NBA referee. As a result, Mauer fails to address the Committee's arguments in any meaningful way and simply reiterates the district court's reasoning, which the Committee has already debunked.

Rather than address the authorities requiring administrative exhaustion of his claim, Mauer restates the uncontested point that the district court need not accord deference to the Committee's construction of unambiguous Plan provisions. That is beside the point. The procedural question for this Court is whether, before determining if the Plan is ambiguous, the district court should have afforded the Committee an opportunity to address Mauer's proffered construction of the Plan in the first instance. The authorities cited by the Committee, which Mauer does not address, overwhelmingly support that approach. Mauer's related contention that the Committee waived its exhaustion argument has it backwards: The Committee raised exhaustion below at the first point at which it was presented. It is Mauer

---

[1] Unless otherwise noted, all capitalized terms have the same meaning as defined in Appellant's opening brief.

who failed to timely challenge the Committee's construction of the plan document, which is what creates the exhaustion problem.

Mauer similarly fails to address the Committee's arguments for overturning the district court's holding that the Plan terms are unambiguous. He offers no basis for disputing that there are two reasonable constructions of the phrase "termination of employment": (*i*) complete separation from employment; and (*ii*) complete separation with no reasonable prospects of returning to work. Nor does he address the three reasons identified by the Committee for why the district court's ruling was in error: (*i*) the court mischaracterized the Committee's twin constructions of the Plan (a mischaracterization that Mauer repeats in his brief); (*ii*) the court relied on Plan provisions that are consistent with both proffered constructions; and (*iii*) the court failed to distinguish this Court's authorities that, under similar circumstances, concluded that plan language was ambiguous.

Mauer's final argument that he should prevail even under an arbitrary and capricious standard is not supported by the district court's decision and is mistaken in any event. Because there are two reasonable constructions of the term "termination of employment," there was nothing arbitrary or capricious about the Committee's decision to temporarily deny Mauer's claim based on the second construction. Given Mauer's pending lawsuit related to his firing, the Committee

2

could reasonably conclude that there is a reasonable prospect of Mauer's employment being reinstated.

## ARGUMENT

**I. THE DISTRICT COURT SHOULD NOT HAVE DETERMINED WHETHER THE PLAN WAS AMBIGUOUS WITHOUT AN ADMINISTRATIVE RECORD FIRST ADDRESSING THIS ISSUE.**

Mauer does not dispute that, during the administrative process, the Committee did not address the argument he advanced at the district court that the meaning of "termination of employment" is unambiguous. *See* Opening Br. 22. Mauer nevertheless proffers three arguments as to why the case should not be remanded to the Committee: (*i*) the Committee's determination is not entitled to deference if the Plan terms are unambiguous; (*ii*) he already presented to the Committee his proffered construction of the Plan; and (*iii*) even if he failed to present his construction during the administrative process, the Committee waived its exhaustion argument because it was not raised at the district court. Each of these arguments fails.

### A. Mauer Erroneously Focuses on the Standard of Review.

Mauer's first argument obfuscates the issue by focusing on the standard of review. To be clear, the Committee has at no point challenged the proposition that *de novo* review of Mauer's claim would be warranted if the Court finds that the Plan is unambiguous. Nevertheless, regardless of the standard of review, the district court's role is limited to reviewing the pre-existing administrative record.

3

Opening Br. 16; *see Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016) ("[W]hen reviewing claim denials, whether under the arbitrary and capricious or *de novo* standards of review, district courts typically limit their review to the administrative record before the plan at the time it denied the claim.").

Mauer's reliance on *Buckley v. Slocum Dickson Medical Group, PLLC*, 585 F. App'x 789 (2d Cir. 2014) and other authorities holding that a court should determine whether plan terms are ambiguous is thus misplaced. None of these rulings eliminates the requirement that, before proceeding to court, a participant must exhaust the Plan's internal claims process. Nor do they diminish the force of the arguments in favor of exhaustion (Opening Br. 15–16), including that, before delving into the intricacies of plan interpretation, district courts should have the benefit of an interpretation by those charged with responsibility for administering the plan. By proceeding without a full administrative record, the district court lacked the benefit of the Committee's reasoning, which likely explains why the court ultimately misconstrued the Committee's position. *See id.* at 16.

**B.    Mauer Did Not Challenge the Committee's Interpretation of the Plan at the Administrative Level.**

Mauer claims that he raised his proposed construction of "termination of employment" at the administrative level and that the Committee supposedly "did not contest" it. Opp. 6. A review of the record shows otherwise.

4

In its initial denial letter, the Committee identified termination of employment as one of the distribution events that could trigger immediate payment of his pension, and it acknowledged that Mauer had "completed a section [of his pension application] indicating that the reason for payment of [his] Plan benefit is termination of employment." A-144. The Committee determined, however, that "[i]n light of the current uncertainty regarding [Mauer's] intention to return to employment, [he had] not attained a distribution event under the Plan." A-145. These statements put Mauer on notice that, for purposes of determining whether a distribution event had occurred, the Committee interpreted the Plan to mean that a "termination of employment" has not taken place if there is uncertainty as to the referee's potential return.

Yet Mauer did not challenge that interpretation in his administrative appeal. In fact, he did not reference *any* Plan provision. Instead, he argued exclusively—not "in the alternative" (*contra* Opp. 26)—that there was no possibility he would return to work. A151–152 ("The Committee based its denial on the erroneous conclusion that Mr. Mauer's request for 'such other relief as the Court deems just and proper' 'may include reinstatement of employment.' This is incorrect: Mr. Mauer did not request reinstatement as NBA referee."). In other words, Mauer accepted the Committee's construction of "termination of employment" and argued that his claim should be granted even under that construction. Mauer cites nothing

5

showing that he challenged the Committee's construction during the administrative process.

Perhaps recognizing the lack of record support for his position, Mauer ultimately reverts to the contention that he was not required to present all of his arguments during the administrative process, but rather only needed to assert his "claims." In support, he relies on an unpublished, non-binding district court opinion. Opp. 23 (citing *Gannon v. NYSA-ILA Pension Tr. Fund & Plan*, No. 09-cv-10368, 2011 WL 868713, at *5 (S.D.N.Y. Mar. 11, 2011)). Contrary to Mauer's assertion (Opp. 12, 22–23), this Court has never endorsed a distinction between "claims" and "issues." For the reasons stated in the opening brief, the Court should hold that claimants must exhaust all issues, not just claims. *See* Opening Br. 14.[2]

### C. The Committee Did Not Forfeit the Exhaustion Argument.

Finally, Mauer is wrong that the Committee forfeited its exhaustion argument by not raising it at the district court. A review of the record shows that the Committee raised the exhaustion argument as soon as it presented itself.

---

[2] In any event, *Gannon* merely held that a participant did not fail to exhaust his claim by failing to bring to the administrator's attention a court ruling that arguably entitled him to benefits as a matter of law. *See Gannon*, 2011 WL 868713, at *5 . *Gannon* has no bearing on whether a participant should be required to exhaust arguments pertaining to plan interpretation, as to which the plan administrator has unique expertise.

6

In denying Mauer's administrative appeal, the Committee observed that Mauer "does not dispute the [prior] Determination's underlying premise that, if there is uncertainty as to your return to employment as an NBA referee, a distribution event has not been attained under the terms of the Plan." A-157. In his complaint, Mauer did not challenge that premise. Instead, he reiterated that he "does not seek, and does not want, and will not accept reinstatement as an NBA referee" (A-12), and he cited case law purportedly showing that he could not win reinstatement in his lawsuit. A-11–16.

Accordingly, when Defendants moved to dismiss, they had no reason to believe that Mauer intended to challenge the Committee's construction of the phrase "termination of employment." Rather, the complaint purported to challenge only the Committee's factual determination that there was a reasonable prospect that Mauer may be reinstated. Defendants therefore limited their motion to arguing that the Committee did not act arbitrarily and capriciously when it determined that Mauer was not entitled to an immediate lump sum benefit in light of the uncertainty regarding his return to employment.

It was not until Mauer opposed the motion to dismiss and cross-moved for summary judgment that he argued for the first time that the phrase "termination of employment" was unambiguous and required his pension to be paid immediately. A-244. Mauer's failure to exhaust first became an issue at that point, and the

7

Committee addressed it in the very first paragraph of its reply brief. A-263. There was thus no forfeiture as the Committee was not required to raise Mauer's exhaustion problem until the issue presented itself below.

## II. THE DISTRICT COURT ERRED IN HOLDING THAT THE PHRASE "TERMINATION OF EMPLOYMENT" IS UNAMBIGUOUS.

On the merits, Mauer largely restates the district court's rationale for why "termination of employment" is supposedly unambiguous without meaningfully addressing the Committee's contrary arguments. Opp. 15–21. Mauer even repeats the district court's mischaracterization of the Committee's position, claiming that the Committee read "termination of employment" to mean "permanent and irrevocable." *Id.* at 16–17, 29; *see also* Opening Br. 23. And, like the district court, he fails to explain why other Plan provisions are inconsistent with the Committee's construction or to distinguish the cases supporting a finding of ambiguity.

### A. Mauer Has Not Demonstrated that the Committee's Construction of the Plan Was Implausible.

Like the district court, Mauer falsely accuses the Committee of rejecting his claim because his termination was not "permanent and irrevocable." Opp. 29. That was never the Committee's position, however. Mauer never addresses the second plausible interpretation that the Committee actually proffered: that "termination of employment" means a separation with no reasonable prospects for

8

returning.  A-265.³  Instead, he merely quotes the district court's statement that it saw "no justification for treating any alleged uncertainty surrounding Mauer's prospect of re-employment any differently than the uncertainty surrounding any *former* referee's prospect of re-employment."  (Opp. 20.)  But the two situations are distinguishable: In the ordinary course, an involuntarily terminated referee would not reasonably be expected to return to work, but Mauer's circumstances are different given his lawsuit challenging his termination.  Furthermore, neither the district court nor Mauer consider that a referee could terminate his employment voluntarily, in which case it would certainly be reasonable to inquire whether the referee intends to return before making a pension payment.

Mauer also fails to explain why it was unreasonable for the Committee to consider potential tax disqualification issues in construing the Plan.  *Id.* at 32–33.  His effort to distinguish the Second Circuit's ruling in *Aracich v. Board of Trustees of Employee Benefit Funds of Heat & Frost Insulators Local 12*, No. 22-2544,

---

³ Mauer purports to justify this contention by citing to a single sentence in Defendants' reply brief below, which states that (as Mauer himself had acknowledged), "'termination,' as used in the Plan and elsewhere is generally understood to mean a permanent, irrevocable cessation . . . ."  Opp. 29 n.3.  As previously explained (Opening Br. 10), when read in context, this sentence does not state the Committee's interpretation.  Rather, it is an explanation as to why Mauer was mistaken in concluding, based on dictionary definitions, that "termination of employment" unambiguously meant separation from employment, without any regard to the referee's prospects of returning to work.  *Id.*

2023 WL 4692316, at *4 (2d Cir. July 24, 2023), based on the different factual issues in that case (Opp. 33), misses the point. The *Aracich* Court clearly endorsed the principle that it is reasonable for a plan administrator to construe the plan in a manner that avoids "jeopardiz[ing] the Plan's tax-qualified status," which is precisely what the Committee did here. *Aracich*, 2023 WL 4692316, at *4. The IRS private letter ruling cited by the Committee (Opening Br. 19), to which Mauer offers no response, shows that there is a significant risk of the Plan's tax disqualification if the Plan was construed to entitle a participant to an immediate lump sum benefit, regardless of his prospects of returning to employment.

### B. Mauer Does Not Overcome the Flaws in the District Court's Construction of the Plan.

The Committee argued that there were three separate errors in the district court's decision. Mauer has failed to effectively address all three.

**First**, the district court incorrectly fixated on a construction of the Plan the Committee did not actually proffer. As discussed in Part II.A *supra*, Mauer does not respond to this point.

**Second**, Mauer has failed to rebut the Committee's explanation for why the Plan provisions cited by the district court as support for a finding that the Plan was unambiguous are consistent with the Committee's proffered construction. Mauer spills much ink justifying the district court's consideration of these other provisions as part of a "contextual" construction of the Plan. Opp. 30–32. The

Committee does not dispute that a Plan provision must be read in context (Opening Br. 17); however, the Committee's point is that the provisions cited by the district court are consistent with both possible readings of "termination of employment." *Id.* Mauer does not meaningfully address that argument.

In particular, the Committee pointed out that the Plan provisions contemplating the return of terminated referees are not inconsistent with an interpretation conditioning the time of payment of pension benefits on a referee having no reasonable prospects of returning to employment. *Id.* at 23. In response, Mauer continues to conflate the description of the *amount* of benefits in which a "Terminated Referee" vests (Section 7.1(a)) with the description of *when* a terminated referee can begin to receive that benefit (Section 8.2). For purposes of determining the *amount* of a pension in which a terminated referee vests, the referee's return to employment is irrelevant since, whether or not the referee returns, his vested benefits cannot be taken away. But for purposes of determining *when* a terminated referee can begin to receive a pension, the prospects of returning to work could be very relevant, since they could lead to the payment of a pension to a referee even if he is expected to return to work.

Mauer's reliance on Sections 2.3 and 2.4 of the Plan is similarly misplaced because those provisions do not address *when* a terminated referee is entitled to receive a pension, let alone whether the timing of the payment should be

11

influenced by the prospects of the referee's return to employment. In fact, contrary to Mauer's assertion (Opp. 30), Section 2.4 does not address a referee who returns to employment at all; it merely states that "[a]ny Referee" who receives his pension "shall thereupon cease to participate in the Plan." A-30. Meanwhile, as previously explained (Opening Br. 24), while Section 2.3 addresses whether a "former Referee" who returns to employment may participate in the Plan, it does not mention whether the returning referee has already received a pension. In light of Section 2.4, it is reasonable to assume that a referee who returns to work (as contemplated in Section 2.3) did *not* already receive his pension. Otherwise, there would be no way to reconcile Section 2.4's requirement that the referee who received his pension immediately cease to be a participant with Section 2.3's requirement that he continue to participate in the Plan and potentially accrue additional benefits.[4]

**Third**, Mauer has failed to distinguish the Second Circuit authorities supporting the view that "termination of employment" is ambiguous. *Id.* at 25–29 (citing *Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 121–25 (2d Cir. 2022); *O'Neil v. Ret. Plan for Salaried Emps. of RKO Gen.*, 37 F.3d 55, 59 (2d Cir. 1994); *cf. Heidgerd v. Olin Corp.*, 906 F.2d 903, 908–09 (2d Cir. 1990)). Mauer argues

---

[4] The clause in Section 2.3 regarding referees returning after 2010 does not alter this conclusion because all benefit accruals ceased after that date.

12

that the specific terms at issue in *Soto* and *O'Neil* were different, but that misses the point. In each case, the Court could have concluded, based on its own contextual analysis of the plan, that one interpretation was stronger than the other. Instead, the Court declined to do so because it recognized that both interpretations were plausible, warranting deference to the administrator's interpretation.

For example, in *Soto*, the plan required that severance benefits be paid to a participant who was "involuntarily terminat[ed]." *Soto*, 26 F.4th at 121. A plain reading of the term could encompass any termination that was "involuntary" in the sense that it was against the participant's wishes. *Id.* at 116. But the Court recognized that, in the context of the plan, "the phrase may reasonably be interpreted more narrowly" to apply only where the participant's termination was at the employer's behest. *Id.* Similarly, here, "termination" could mean any form of termination, but it could be more narrowly interpreted to mean a termination with no reasonable prospects of returning. Opening Br. 28.

For all these reasons, Mauer has failed to rebut the Committee's showing that the phrase "termination of employment" is ambiguous within the context of the Plan. Consequently, the district court erred by not reviewing the Committee's actions under an arbitrary and capricious standard.

13

## III. THE COMMITTEE'S DETERMINATION SHOULD BE UPHELD UNDER THE ARBITRARY AND CAPRICIOUS STANDARD.

In a final thrust, Mauer argues that he should prevail even if the Committee's action is reviewed under an arbitrary and capricious standard. Opp. 27–35. But in support, he repeats his argument that "termination of employment" unambiguously means any termination, without regard to the prospects of returning. *Id.* at 28–29. That argument fails for the reasons already stated. *See* Part II.A *supra*. Because the phrase has more than one plausible construction, there is nothing arbitrary and capricious about the Committee's decision to adopt one of those constructions in favor of the other. *See Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 147 (2d Cir. 2003) (deferring to plan administrator's reasonable construction of plan).

Mauer's second contention—that he should prevail even under the Committee's interpretation because he had no prospects of returning to employment (Opp. 32–35)—was fully addressed, both in the administrative process and Defendants' motion to dismiss. A-302 n.7. As the Committee explained below (A-269–270), courts hold that a participant's election of front pay relief in lieu of reinstatement does not preclude him from changing course if, for example, front pay relief turns out not to be available to him. *See, e.g.*, *Teutscher v. Woodson*, 835 F.3d 936, 955 (9th Cir. 2016) (finding that plaintiff retained the option to elect between reinstatement or front pay all the way until jury

14

instructions). Thus, no matter how emphatic Mauer's present statement of his intention may be, it was not arbitrary and capricious for the Committee to deny immediate payment of his pension because of the risk that he might later seek reinstatement.

## CONCLUSION

For the foregoing reasons, this Court should vacate the district court's decision granting summary judgment to Mauer as to liability on Count I of the Complaint and remand for further proceedings.

Dated: October 24, 2024       Respectfully submitted,

/s/ Myron D. Rumeld

MYRON D. RUMELD
SYDNEY L. JULIANO
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
mrumeld@proskauer.com
sjuliano@proskauer.com

JOHN E. ROBERTS
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Tel: (617) 526-9813
jroberts@proskauer.com

*Attorneys for Defendant-Appellant*